JOHN R. HERNANDEZ AND ONETA B. HERNANDEZ, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 9915–76.     Filed September 27, 1979.

John R. Hernandez, pro se.
*Roger Osburn,* for the respondent.

IRWIN, *Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1974 in the amount of $2,681.55. Respondent also determined an addition to tax under section 6651(a)(1)[1] in the amount of $190.97.

Four issues are presented for our decision: (1) Whether an exclusion under section 104(a)(4) is available for continuation pay received from the Armed Forces by petitioner, John R. Hernandez, because of a disease incurred while on a 2-week Army Reserve training period; (2) the amount of a casualty loss to which petitioners are entitled for a 1964 Dodge Dart wrecked

---

[1] All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue.

during 1974; (3) the amount of casualty loss to which petitioners are entitled for amounts expended in replacing an 8-year-old air-conditioning/heating unit destroyed by lightning; and (4) whether petitioners are liable for an addition to tax under section 6651(a) for having delinquently filed their 1974 return.

## FINDINGS OF FACT

Some of the facts have been stipulated. The stipulation of facts, along with attached exhibits, are incorporated herein by this reference.

Petitioners, husband and wife, were residents of Dade City, Fla., at the time of filing their petition herein. They filed their joint Federal income tax return for the taxable year 1974 with the Internal Revenue Service Center at Chamblee, Ga. References to petitioner are hereafter to John Hernandez.

In 1973, petitioner was a member of the United States Army Reserve. During the period May 19, 1973, through June 2, 1973, he was on active duty at Military Ocean Terminal, Kings Bay, Ga. While on active duty, petitioner was injured when both of his legs were slammed against the bed of a truck. As a result of the injury, he incurred thrombophlebitis. A "Statement of Medical Examination and Duty Status" indicated that petitioner could no longer perform normal military duty. He suffered from post-phlebitic pain and it was indicated that he should not stand or walk for more than 20 minutes at a time.

After petitioner's duty training ended on June 2, 1973, the Department of the Army continued to pay him throughout 1973 and for a period of time in 1974. He signed an agreement in which he consented to remain under the care of the military for purposes of hospitalization, and, if eligible, for purposes of subsequent separation or retirement for physical disability. This period was not to be considered active military service.

Military regulation AR40-3, applicable to the situation in which a reservist is hospitalized or requires continued medical treatment at the expiration of his period of training duty, reads in pertinent part:

> j. *Continuation of pay and allowances.* When a member of the Army Reserve or the Army National Guard is hospitalized or requires continued medical treatment at the expiration of his period of training duty for an in-line-of-duty condition, he is entitled to continuation of pay and allowances as authorized in paragraph 80254 and table 8–2–4, Department of Defense

Military Pay and Allowances Entitlements Manual. Entitlement to pay and allowances ceases when treatment is terminated by medical authority, when the individual can perform his military duties in the same manner as before the medical conditions occurred, or when disability processing is completed through a physical evaluation board, whichever occurs first.

Paragraph 80254, subparagraph (a) deals with entitlement to pay and allowances while disabled. Under table 8–2–4, rule 6,

If a member of a reserve component * * * is disabled in the line of duty due to disease while serving on active duty for thirty days or less then the member is entitled to the basic pay and allowances to which he was entitled at the time the disease was contracted. Such entitlement exists during periods of hospitalization or rehospitalization but not for more than a total of 6 months after the end of the member's prescribed tour of duty or training.

Even where the 6-month period has expired, it sometimes happens that an individual will erroneously continue to receive pay and allowances because of an error either at the unit level (as where the unit neglects to initiate or improperly initiates the paperwork), or, if the unit properly notifies the Finance Center, at the Finance Center.

On their 1974 return, petitioners did not include $7,680.24 received from the Department of the Army for that year. The Department of the Army, however, withheld Federal income taxes of $921.60 and social security taxes of $14.85 from such amount, issuing a W–2 Form showing such payment and withholdings. Petitioners attached the W–2 Form to their 1974 return along with a Form 843 claim wherein they made a claim for the $936.45 withheld, stating as follows:

Disability payments from Department of Army were erroneously subjected to withholding and social security taxes. Payments exempt under section 104(4) of I.R.S. Code. See copy of W–2.

On their 1974 income tax return, petitioners claimed a deduction for casualty losses in the total amount of $1,793.06 from two separate casualties: one of $600 resulting from an automobile accident in which their 1964 Dodge was totally destroyed (for insurance purposes) and another of $1,193.06 due to lightning damage to their house's reverse cycle air-conditioning/heating unit. Petitioners claim that both figures are net of the $100 section 165(c)(3) limitation.

The automobile that was wrecked was used as petitioners' personal automobile. While petitioners did not have collision insurance, the other party to the accident, who was at fault, did

have insurance. In settlement of their claim, petitioners were offered $440 which included compensation for the destroyed car, property loss, and medical expenses. Petitioners rejected that offer. The insurance company then went into receivership, and claims against it had to be filed with the Florida Guarantee Insurance Corp., an instrumentality of the State of Florida. The $600 figure deducted with respect to the car was based on petitioners' determination that it would cost $700 to obtain a replacement which was in substantially the same condition.

The heating-cooling unit was approximately 7 years old when it was struck by lightning. It apparently provided heating and cooling for the entire house and consisted, in part, of a compressor unit mounted in the attic with a control unit mounted in the hall of the house.

In the statutory notice of deficiency, respondent determined that each casualty resulted in a loss of $200 and that the amount of the deduction should be limited to $300, representing $400 for the two losses combined less $100 for the section 165(c)(3) limitation. Consequently, he disallowed $1,493.06, the difference between the amount claimed and the amount he held allowable.

Oneta Hernandez worked as a bookkeeper in 1974. Petitioner worked as an accountant throughout 1974 and through August 20, 1975. Because of his painful leg condition, he performed most of his duties in bed or lying on a couch. On April 14, 1975, petitioner entered Walter Reed Medical Center. Petitioner was released from Walter Reed on April 20, 1975.

Petitioners' 1974 return was due to be filed on April 15, 1975, but was not filed until August 25, 1975. The envelope was postmarked August 22, 1975, and the return was signed on August 20, 1975. Respondent determined that because the return was not filed within the period prescribed by law, and because petitioners did not show that their failure to timely file was due to reasonable cause, it was appropriate to impose the delinquency penalty of section 6651(a).

## OPINION

The main issue presented for our decision is whether petitioners are entitled to exclude, under section 104(a)(4), continuation pay petitioner received from the Armed Forces for thrombophlebitis incurred at summer camp in 1973.

Petitioner was injured while on active duty with the United

States Army Reserve in May of 1973. Subsequent to his release from active duty, and as a result of the injury, petitioner became incapacitated and required hospitalization. He continued to receive pay under the provisions of military regulations AR40–3, paragraph j, paragraph 80254, subparagraph (a) and table 8–2–4, until sometime in 1974. Petitioner claims that these were disability payments and are excludable from his income under the provisions of section 104(a)(4).[2] Alternatively, he argues that the erroneous payments merely created a debt, the proceeds of which would have to be repaid and which, therefore, are nontaxable. Respondent counters by arguing that the payments received by petitioner did not constitute a pension, annuity, or similar allowance for personal injuries or sickness within the meaning of section 104(a)(4), but rather were continuation payments of petitioner's active duty pay and, therefore, taxable wages. In response to petitioner's alternative argument, respondent points to *James v. United States*, 366 U.S. 213 (1961), as authority for the proposition that even if the payments received by petitioner were subject to repayment and therefore created a debt, they would nonetheless be taxable.

We believe the documents in evidence clearly indicate that the payments received by petitioner constituted salary to which he was properly entitled under military regulations for a period of only 6 months following the end of his 2-week training period and not a "pension, annuity or similar allowance for personal injuries or sickness resulting from active service in the armed forces."[3] As pointed out by respondent, it is clear that the Army itself considered the amounts in question to have been taxable wages or salary because of the withholding of income and FICA taxes. Respondent's expert, an Army Reserve personnel officer, testified that as long as a reservist is receiving his pay and allowances as if he were on active duty, such pay and allowances

---

[2] SEC. 104. COMPENSATION FOR INJURIES OR SICKNESS.

(a) IN GENERAL.—Except in the case of amounts attributable to (and not in excess of) deductions allowed under section 213 (relating to medical, etc., expenses) for any prior taxable year, gross income does not include—

\* \* \* \* \* \* \*

(4) amounts received as a pension, annuity, or similar allowance for personal injuries or sickness resulting from active service in the armed forces of any country or in the Coast and Geodetic Survey or the Public Health Service, or as a disability annuity payable under the provisions of section 831 of the Foreign Service Act of 1946, as amended (22 U.S.C. 1081); and \* \* \*

[3] Compare *Parks v. Commissioner*, T.C. Memo. 1979–182.

are considered wages by the Army, and Army personnel is instructed to include them on the recipient's W–2 Form. As is also pointed out by respondent, the fact that Congress has enacted a separate provision allowing an exclusion for compensation received by a member of the Armed Forces while he is hospitalized as a result of wounds, disease, or injury incurred while serving in a combat zone, section 112(a)(2), indicates that section 104(a)(4) does not apply to wages such as those here involved.[4]

Nor do we believe that petitioner escapes taxation even if the erroneous payments are considered as having created an obligation to repay. Such an obligation is not a loan since there was no consensual recognition, express or implied, of an obligation to repay and the payments were without restriction as to disposition. For instance, in *United States v. Lewis*, 340 U.S. 590 (1951), the taxpayer erroneously received an excessive bonus payment of $22,000 from his employer in 1944. As a result of subsequent litigation, it was determined that the taxpayer had to return $11,000 to his employer, which he did in 1946. The taxpayer argued that, because of this refund, he should recompute his tax for 1944. The Government contended that the $11,000 should be deducted as a loss on the taxpayer's 1946 return. Relying on the annual accounting period concept which underlies our system of taxation, the Supreme Court held for the Government. See also *Healy v. Commissioner*, 345 U.S. 278 (1953).[5]

Accordingly, we hold the payments received by petitioner constituted taxable wages.

In 1974, petitioner's 1964 Dodge Dart was wrecked, and he was not compensated for this by insurance. On his return, he

---

[4] While not raised by petitioner, the payments at issue are not excludable from petitioner's income under sec. 105(d), which read in pertinent part:

Gross income does not include amounts referred to in subsection (a) if such amounts constitute wages or payments in lieu of wages for a period during which the employee is absent from work on account of personal injuries or sickness; * * *

Under the circumstances, petitioner was not absent from work from the Army Reserve in 1974. Petitioner's consent to remain under the care of the military was not considered active military service, nor could petitioner be called upon to perform the duties required of an Army reservist. See secs. 1.105–4(a)(3)(i)(A) and 1.105–4(a)(5), Income Tax Regs.

[5] In *James v. United States*, 366 U.S. 213, 219 (1961), the Supreme Court noted:

"When a law-abiding taxpayer mistakenly receives income in one year, which receipt is assailed and found to be invalid in a subsequent year, the taxpayer must nonetheless report the amount as 'gross income' in the year received."

took a $600 casualty loss deduction under section 165(c)(3) which he claimed was net of the $100 limitation of that section. Respondent maintains the total damage to the car was $200, its value before the accident.

The only evidence in the record which has any bearing on the value of the car prior to the accident was the fact that petitioner was offered $440 by the insurance company for his entire loss, not only the damage to the automobile, but also to compensate him for the loss of other property (clothing, tools, etc.) plus medical expenses. There was no other evidence in the record as to the value of the car prior to the accident except for petitioner's uncorroborated testimony that it would cost $700 to replace or restore the car. On this evidence, we must sustain respondent's determination and hold that the amount of petitioner's deduction is $100.[6]

Petitioner also claimed a deduction of $1,193.06 for the destruction of his home air-conditioning/heating unit by lightning. The amount claimed represents the cost of replacing the destroyed unit. Petitioner contends that section 1.165–7, Income Tax Regs., allows this amount as a deduction.[7]

Respondent counters by asserting that the cited regulation applies only to repairs of property, not replacements, and that the new unit increased the value of the house. He further argues that even if it applies to replacements, the test of the regulation has not been met.

We believe that respondent is correct on both counts. It is questionable that the regulation applies to "replacements";[8] this may be due only to the fact that a replacement would not comply with requirement (d) of section 1.165–7(a)(2)(ii), Income Tax Regs. Assuming, however, that (d) does apply to replacements as well as to repairs, the record's import is to the effect that (d) was

---

[6]The facts as developed at trial indicate that petitioner had a claim pending with the Florida Guarantee Insurance Corp. for the damage to his automobile. If this was the case, petitioner would not be entitled to a deduction for any loss in 1974. Sec. 1.165–1(d)(2)(i), Income Tax Regs. However, because respondent has conceded that petitioner is entitled to a casualty loss, we do not address this issue.

[7]Sec. 1.165–7(a)(2)(ii), Income Tax Regs., states:

"The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty."

[8]*Lemmon v. Commissioner*, T.C. Memo. 1968–102.

in fact not satisfied. This is so because petitioner has not shown that the fair market value of the new unit did not exceed the fair market value of the destroyed unit. Thus, we must sustain respondent's determination.[9]

Finally, we reach the issue of whether petitioner is liable for an addition to tax under section 6651(a) for delinquently filing his return.

Petitioner's 1974 return was due on April 15, 1975. It was not filed until August 25, 1975. There being no question that the return was filed late, the issue we must resolve is whether petitioner's failure to timely file his return was "due to reasonable cause and not due to willful neglect." Petitioner claims that he was not mentally or physically able to prepare the return by the due date, that his wife was unable to prepare the return, and that they attempted to obtain an extension, but it was denied because said request was received subsequent to the return's due date. They claim the request for extension was mailed on April 14, 1975. Cf. sec. 1.6081–1(b), Income Tax Regs.

The record clearly supports a holding that petitioner was negligent in not timely filing his return. Although petitioner entered the hospital on April 14, 1975, he nonetheless worked as an accountant through at least August 1975 when he finally filed the 1974 return. Petitioners have not substantiated their claim that they filed for an extension. Further, we are confident that, with petitioner's verbal guidance, his wife, who was a bookkeeper, could have prepared the return prior to the due date. Accordingly, we hold that there is no reasonable basis for excusing petitioners' delinquent filing of their 1974 return.

*Decision will be entered for the respondent.*

---

[9]In the notice of deficiency, respondent erroneously failed to deduct the $100 limitation of sec. 165(c)(3) from each casualty loss, deducting it instead only once from the total of the two casualty losses claimed for 1974. Because respondent did not attempt to remedy this error, we merely sustain his original determination.