ROBERT F. NEECE AND GAY F. NEECE, ET AL., [1] Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent Neece v. Commissioner
Docket Nos. 14786-81, 16602-81, 16603-81.
United States Tax Court
T.C. Memo 1986-121; 1986 Tax Ct. Memo LEXIS 488; 51 T.C.M. (CCH) 701; T.C.M. (RIA) 86121; March 25, 1986. Edward R. Joyce, for the petitioners. Steven W. LaBounty, for the respondent. SHIELDS
MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: Respondent determined that deficiencies in income tax and additions to tax are due from petitioners as follows: Addition to Tax
Year
Deficiency
[2] Section 6653(a) 1973
$3,038.00
1974
6,652.44
1975
5,876.00
1976
10,302.45
515.12
1977
8,340.70
470.69
[3] 1978 1,917.37
95.87
*490 After concessions, the issues remaining for decision are: (1) Whether petitioners are entitled to deductions in excess of those allowed by respondent for automobile expenses, travel expenses, and employee business expenses; (2) Whether petitioners are entitled to casualty losses from a theft of certain personal property, the loss of a black opal stone, and/or the breakage of water lines on two separate occasions; (3) Whether petitioners are entitled to deductions in excess of those allowed by respondent for charitable contributions and medical expenses; (4) Whether petitioners are entitled in 1973, 1974 and 1975 to certain capital loss carryovers, and in 1976, 1977 and 1978 *491 to a deduction from a worthless nonbusiness bad debt; (5) Whether petitioners are entitled to investment tax credit in 1976, 1977 and 1978; and (6) Whether additions to tax under section 6653(a) are due for the years 1976, 1977 and 1978 because of petitioners' negligence or intentional disregard for applicable rules and regulations. FINDINGS OF FACT Some of the facts have been stipulated and are so found, the stipulations and related exhibits being incorporated herein by reference. Petitioners, Robert F. Neece and Gay F. Neece, husband and wife, filed joint income tax returns for 1973 through 1977. Robert F. Neece filed a married-filing-separately return for 1978. All of the returns were filed with the Kansas City Service Center. Both petitioners resided in St. Louis, Missouri, on the dates the petitions were filed herein. (1) Automobile, Travel and Employee Business Expenses
During the years in issue, petitioner [4] was employed as a salesman and sales manager for Paramount Television Sales, Inc. (Paramount), a separate corporation owned by Paramount Pictures. Throughout 1973 and part of 1974, he leased and used for business purposes a 1972 Lincoln Mark IV. *492 However, on October 4, 1974, he bought the Lincoln from the lessor and thereafter used it solely for personal purposes. Beginning in November 1974 and continuing throughout 1975, 1976 and 1977 petitioner leased and used for business purposes a 1975 Cadillac Eldorado. During 1978, he owned and used in connection with the employment a new 1978 Mercury. For the years 1973 through 1978, petitioners claimed and respondent allowed and disallowed deductions for automobile expenses as shown in Schedule 1: SCHEDULE 1
AUTOMOBILE EXPENSES
1973
Amount
Amount
Amount
Item
Claimed
Allowed
Disallowed
Leasing of Car
$2,884.92 $2,884.92 Gasoline, Oil and Grease
787.00 [1] 393.82 393.18
Repairs
691.07 631.50 59.57
Licenses
30.50 30.50
Inspection
2.50 2.50
Triple A Membership
30.00 30.00
Driver's License
3.40 3.40
Ladue City Sticker
5.00 5.00
Insurance
217.00 217.00 Wash
150.00 150.00
Depreciation
TOTALS
$4,801.39 $4,127.24 $ 674.15
TIMES:
100% X 674.15
PERCENT USED IN BUSINESS
100%
79%
21% X 4,127.24
SUBTOTALS
$4,801.39 $3,260.52 $1,540.87
LESS: AMOUNT REIMBURSED
BY EMPLOYER
(731.97)
(731.97)
GRAND TOTALS
$4,069.42 $2,528.55 [2] $1,540.87
*493 1974
Lincoln
Mark IV
Cadillac
Amount
Amount
Amount
Amount
Item
Claimed
Allowed
Allowed
Disallowed
Leasing of Car
$2,901.35 [3] $2,163.69 [4] $612.66 $ 125.00
Gasoline, Oil and Grease
772.56 [5] 353.33 [6] 54.41 364.82
Repairs
680.77 390.09 290.68
Licenses
57.50 57.50
Inspection
7.00 7.00
Triple A Membership
30.00 30.00
Driver's License
Ladue City Sticker
5.00 5.00
Insurance
373.50 108.50 265.00
Wash
250.00 250.00
Depreciation
TOTALS
$5,077.68 $3,015.61 $667.07 $1,395.00
100% X 1,395.00
TIMES:
49% X 3,015.61
PERCENT USED IN BUSINESS
100%
51%
97%
3% X 667.07
SUBTOTALS
$5,077.68 $1,537.96 $647.06 $2,892.66
LESS: AMOUNT REIMBURSED
BY EMPLOYER
(475.50)
(475.50)
GRAND TOTALS
$4,602.18 $1,062.46 $647.06 $2,892.66
1975
Amount
Amount
Amount
Item
Claimed
Allowed
Disallowed
Leasing of Car
$3,676.56 $3,676.56 Gasoline, Oil and Grease
789.05 475.80 313.25 Repairs
386.19 68.05 318.14 Licenses
32.00 32.00 Inspection
3.00 3.00 Triple A Membership
30.00 30.00 Driver's License
Ladue City Sticker
5.00 5.00 Insurance
475.00 139.00 336.00 Wash
250.00 250.00 Depreciation
TOTALS
$5,646.80 $4,359.41 $1,287.39 TIMES: PERCENT USED IN BUSINESS
100%
100%
100%
SUBTOTALS
$5,646.80 $4,359.41 $1,287.39 LESS: AMOUNT REIMBURSED
BY EMPLOYER
(731.90)
(731.90)
GRAND TOTALS
$4,914.90 $3,627.51 $1,287.39 *494 1976
Amount
Amount
Amount
Item
Claimed
Allowed
Disallowed
Leasing of Car
$3,676.56 $3,675.36 $ 1.20
Gasoline, Oil and Grease
693.19 685.30 7.89
Repairs
369.77 259.64 110.13
Licenses
Inspection
Triple A Membership
20.00 20.00
Driver's License
Ladue City Sticker
Insurance
351.86 351.86
Wash
300.00 300.00
Depreciation
TOTALS
$5,411.38 [2] $4,620.30 $ 791.08
TIMES:
90% X 791.08
PERCENT USED IN BUSINESS
90% 50%
40% X 4,620.30
SUBTOTALS
$4,870.24 $2,310.15 $2,560.09
LESS: AMOUNT REIMBURSED
BY EMPLOYER
(674.30)
(674.30)
GRAND TOTALS
[1] $4,195.94 $1,635.85 $2,560.09
1977
Amount
Amount
Amount
Item
Claimed
Allowed
Disallowed
Leasing of Car
$3,776.78 $3,776.78 Gasoline, Oil and Grease
794.32 794.32 Repairs
374.48 374.48 Licenses
Inspection
2.50 2.50 Triple A Membership
36.00 36.00 Driver's License
Ladue City Sticker
Insurance
290.00 290.00
Wash
300.00 300.00
Depreciation
TOTALS
$5,574.08 $4,984.08 $ 590.00
TIMES:
90% X 590.00
PERCENT USED IN BUSINESS
90% 50%
40% X 4,984.08
SUBTOTALS
$5,016.67 $2,492.04 $2,524.63
LESS: AMOUNT REIMBURSED
BY EMPLOYER
(910.70)
(910.70)
GRAND TOTALS
[3] $4,105.97 $1,581.34 $2,524.63
*495 1978
Amount
Amount
Amount
Item
Claimed
Allowed
Disallowed
Leasing of Car
Gasoline, Oil and Grease
558.19 558.19 Repairs
264.21 264.21 Licenses
26.10 26.10 Inspection
3.00 3.00 Triple A Membership
26.00 36.00 Driver's License
Ladue City Sticker
5.00 5.00 Insurance
291.00 291.00
Wash
300.00 300.00
Depreciation
226.28 226.28 TOTALS
[4] $1,709.78 [5] $1,118.78 $591.00
TIMES:
90% X 591.00
PERCENT USED IN BUSINESS
90%
50%
40% X 1,118.78
SUBTOTALS
$1,538.80 $ 559.39 $979.41
LESS: AMOUNT REIMBURSED
BY EMPLOYER
(345.28)
(345.28)
GRAND TOTALS
$1,193.52 $ 214.11 $979.41
*496 During the years 1973 through 1978, petitioner was primarily responsible for Paramount's sales in the Midwest, South and Southwest but he traveled throughout the United States selling television programming and motion pictures. For about forty-five weeks during each year petitioner spent four or five days per week away from home. He usually left on Monday and returned on Thursday or Friday. Petitioner testified that during these years and as part of his employment he spent money entertaining customers both at home and away from home, that he was required by Paramount to provide a suitable place to store films, brochures, rating books, sales materials and office supplies, and that he was expected to maintain an office as a base for his promotional and sales activities, including the preparation of contracts and correspondence. He also testified that it was Paramount's policy to reimburse him for his secretary's salary and his expenditures for travel and entertainment but that he received no reimbursement for expenses incurred with respect to office and storage space which he provided in his home for Paramount. He stated that he claimed and received reimbursement for his reimbursable *497 expenses by submitting weekly expense reports to Paramount. In 1972 petitioners hired an architect to supervise the construction of a new garage and an addition to their residence. Petitioners claim that from 1972 to 1976 they used the new garage and addition exclusively for storage and office space. They also claim that during the same period another area of their house was maintained and used exclusively for an office and for storage. In 1976 petitioners employed the same architect to supervise the construction of another garage at the north end of etheir house, convert the old garage into a bedroom/playroom, and add a breakfast room to the rear of their house. Between 1976 and 1978, petitioners claim they used the new garage and the same office and storage area exclusively for business purposes. In the preparation of their tax returns, petitioners claimed that 25 percent of the residence was used for business purposes and deductions for utilities (house and pool), insurance, maintenance (house and pool), repairs, security (food and veterinary supplies for watch dog) and depreciation were computed accordingly. The swimming pool constituted a business item according to petitioners *498 because it was a status symbol of Mr. Neece's success and permitted him to use it as an an "open invitation" to his friends and business associates. For the years in issue, petitioners claimed and respondent disallowed deductions for travel and other business expenses as shown on Schedule 2: SCHEDULE 2
TRAVEL AND OTHER BUSINESS EXPENSES
1973
1974
Amount
Amount
Amount
Amount
Claimed
Disallowed
Claimed
Disallowed
AUTOMOBILE EXPENSES: (See Schedule 1)
$ 4,069.42
$ 1,540.87
$ 4,602.18
$ 2,892.66
TRAVEL EXPENSES: Airline Fares
$ 1,207.44
$ 1,207.44
$ 857.45
Car Rentals & Taxi Cabs
487.60
487.60
188.08
Hotel & Other Travel
Expenses
1,106.74
1,106.74
821.27
Additional Uncompensated
Expenses
2,420.05
1,017.76
SUB TOTALS
$ 5,221.83
$ 2,801.78
$ 2,884.56
$ 2,884.56
OTHER BUSINESS EXPENSES: Movies Previewed
$ 58.73
$ 117.75
Entertainment of
Customers
2,842.57
2,502.88
5,360.76
5,003.08
Gifts to Customers
453.88
453.88
1,308.34
1,308.34
Accounting Services
100.00
120.00
Legal Services
727.00
727.00
Advertising
3.75
35.02
Dues & Subscriptions
108.20
272.42
Repairs to Office
& Equipment
921.73
921.73
1,120.89
1,120.89
Secretarial Services
432.96
432.96
144.00
144.00
Bank Service Charges
16.91
17.62
Office Supplies
85.00
107.95
Utilities (Building)
354.23
354.23
386.50
386.50
Telephone
32.18
26.89
Alarm Services and
Security
139.69
139.69
520.24
520.24
Insurance
64.50
64.50
63.00
63.00
Maintenance & General
Repair
507.32
507.32
310.64
310.64
Pool Maintenance
764.81
764.81
1,881.13
1,881.13
Utilities for Pool
284.00
284.00
354.53
354.53
Depreciation
2,926.65
2,227.55
3,651.18
2,547.79
SUB TOTALS
$10,097.11
$ 8,653.55
$16,525.86
$14,367.14
GRAND TOTALS
$19,388.36
[1] $12,996.20
$24,012.60
[2] $20,144.36
*499 1975
Amount
Amount
Claimed
Disallowed
AUTHOMBILE EXPENSES: (See Schedule 1)
$ 4,914.90
$ 1,287.39
TRAVEL EXPENSES: Airline Fares
$ 425.42
Car Rentals & Taxi Cabs
434.61
Hotel & Other Travel Expenses
1,412.38
Additional Uncompensated Expenses
89.94
SUB TOTALS
$ 2,362.35
$ 2,362.35
OTHER BUSINESS EXPENSES: Movies Previewed
$ 99.25
Entertainment of Customers
9,006.37
8,659.20
Gifts to Customers
768.04
768.04
Accounting Services
Legal Services
1,000.00
800.00
Advertising
55.53
Dues & Subscriptions
324.64
Repairs to Office & Equipment
1,987.36
1,987.36
Secretarial Services
45.00
45.00
Bank Service Charges
24.10
Office Supplies
86.64
Utilities (Building)
475.63
475.63
Telephone
Alarm Services and Security
782.79
782.79
Insurance
86.75
86.75
Maintenance & General Repair
662.31
662.31
Pool Maintenance
1,671.73
1,671.73
Utilities for Pool
398.90
398.90
Depreciation
3,982.43
[3] 2,697.39
SUB TOTALS
$21,457.47
19,035.10
GRAND TOTALS
$28,734.72
[4] $22,684.84
*500 1976
1977
Amount
Amount
Amount
Amount
Claimed
Disallowed
Claimed
Disallowed
AUTOMOBILE EXPENSES: (See Schedule 1)
$ 4,195.94
[1] $ 2,560.09
$ 4,105.97
[3] $ 2,524.63
TRAVEL EXPENSES: Uncompensated Expenses
$ 888.90
$ 888.90
$ 50.00
$ 50.00
OTHER BUSINESS EXPENSES: Movies Previewed
$ 110.00
$ 110.00
$ 91.75
$ 91.75
Entertainment of
Customers
7,551.17
7,551.17
6,062.91
6,062.91
Gifts to Customers
407.13
407.13
181.62
181.62
Accounting Services
Legal Services
62.50
100.00
Advertising
19.24
27.72
Dues & Subscriptions
396.84
318.86
264.95
220.95
Repairs of Office
& Equipment
1,787.05
1,787.05
2,047.86
2,047.86
Secretarial Services
Bank Service Charges
7.30
28.02
Office Supplies
30.11
30.11
103.08
103.08
Utilities (Building)
541.89
541.89
772.47
772.47
Telephone
89.32
89.32
Alarm Services
and Security
353.58
353.58
175.82
175.82
Insurance
122.56
122.56
167.06
167.06
Maintenance &
General Repair
600.04
600.04
264.30
264.30
Pool Maintenance
1,163.89
1,163.89
1,630.71
1,630.71
Utilities for Pool
425.63
425.63
444.24
444.24
Depreciation
5,796.81
[2] 4,531.44
5,014.26
4,558.73
SUB TOTALS
$19,465.06
$18,032.67
$17,376.77
[4] $16,721.50
GRAND TOTALS
$24,549.90
$21,481.66
$21,532.74
$19,296.13
*501 1978
Amount
Amount
Claimed
Disallowed
AUTOMOBILE EXPENSES: (See Schedule 1)
$ 1,193.52
$ 979.41
TRAVEL EXPENSES: Uncompensated Expenses
OTHER BUSINESS EXPENSES: Movies Previewed
$ 75.76
$ 75.76
Entertainment of Customers
2,920.64
2,920.64
Gifts to Customers
145.72
145.72
Accounting Services
360.00
360.00
Legal Services
1,031.16
1,031.16
Advertising
13.64
Dues & Subscriptions
50.00
50.00
Repairs of Office & Equipment
1,230.73
1,230.73
Secretarial Services
Bank Service Charges
24.48
Office Supplies
282.31
282.31
Utilities (Building)
498.29
498.29
Telephone
Alarm Services and Security
272.28
272.28
Insurance
170.25
170.25
Maintenance & General Repair
784.42
784.42
Pool Maintenance
679.41
679.41
Utilities for Pool
336.08
336.08
Depreciation
5,948.42
4,947.64
SUB TOTALS
[5] $14,823.59
$13,784.69
GRAND TOTALS
$16,017.11
$14,764.10
*502 At trial respondent stipulated that petitioners had substantiated the amount and the expenditure but not the deductibility of the expenses set forth on Schedule 3 which petitioners claim as additional business expenses: SCHEDULE 3
OTHER EXPENSES SUBSTANTIATED
1973
1974
1975
Movies Previewed
Entertainment: Groceries
1,226.35
1,353.13
1,864.51
Liquor
1,029.62
1,504.60
1,627.64
Restaurants
113.02
1,696.66
2,483.71
Other
76.26
493.69
2,311.92
SUB TOTAL:
2,445.25
5,048.08
8,287.78
Gifts
416.38
1,307.84
768.68
Accounting
Legal
627.00
689.50
Advertising
Dues
Repairs to Office
213.39
524.85
483.46
Secretarial Services
Bank Service Charge
Office Supplies
Utilities (House)
1,254.43
1,329.90
1,691.72
Telephone
Alarm
260.77
324.50
307.00
Security Dog
387.00
715.98
475.79
Insurance
Maintenance (House)
2,721.55
1,942.19
4,152.61
Pool Maintenance
1,019.57
1,929.51
2,228.97
Pool Utilities
378.66
354.53
531.86
GRAND TOTAL:
$9,097.00
$14,104.38
[1] $19,617.37
1976
1977
1978
Movies Previewed
$ 107.75
$ 95.75
$ 55.75
Entertainment: Groceries
1,592.71
1,346.24
447.99
Liquor
2,809.23
1,681.34
1,279.61
Restaurants
2,855.71
Other
220.00
2,464.90
777.41
SUB TOTAL:
7,477.65
5,492.48
2,505.01
Gifts
265.48
57.83
145.73
Accounting
360.00
Legal
1,031.16
Advertising
Dues
402.98
264.95
50.00
Repairs to Office
Secretarial Services
Bank Service Charge
Office Supplies
Utilities (House)
2,147.62
2,924.46
1,825.14
Telephone
Alarm
282.48
83.31
208.49
Security Dog
104.67
268.48
336.06
Insurance
465.09
668.23
Maintenance (House)
1,334.13
3,308.68
4,508.56
Pool Maintenance
290.88
890.29
Pool Utilities
547.59
426.85
442.17
GRAND TOTAL:
$13,426.32
$13,591.02
$12,358.36
*503 (2) Casualty Losses
(a) Theft of Personal Property
In November 1972, personal property was stolen from petitioners' garage. In January 1973, a proof of loss with respect to the theft was filed by petitioners with their insurance company, The Federal Insurance Company of New Jersey. On the proof of loss the fair market value of the stolen property was shown as $8,985.73 with a deductible amount of $500 for a net claim of $8,485.73. On a subsequent document entitled "Final Loss Adjustment and Work Sheet," which lists the items stolen as including a lawn mower, a bicycle, a circular saw, various tools, a wagon, swim fins, and boating books, the insurance company determined that while the cost of replacing the stolen items was $9,241.74, their fair market value at the time of the burglary was the $8,985.73 shown on the proof of loss. The difference of $256.01 between the cost to replace and the fair market value was referred to by the insurance company as "betterment." On their 1973 tax return petitioners claimed a casualty loss deduction of $656.00 which is represented *504 by the $256.01 in betterment plus the $500.00 insurance deductible less the $100.00 exclusion per incident under section 165(c)(3). Respondent allowed a casualty loss deduction in 1973 of $500.00 less the $100.00, but disallowed the deduction of the $256.00 for betterment. (b) Opal Stone
On May 17, 1974, Gay F. Neece, lost a black opal stone from a ring which also contained fourteen sapphires and twenty-six diamond chips. She last saw the stone at approximately 3:45 a.m. on the date of the loss while standing at the cashier's cage of Caesar's Palace, Las Vegas, Nevada. She noticed the stone was missing some time later upon returning to Circus Circus Hotel, where petitioners were staying. Upon discovering the loss, petitioners notified security guards at both hotels, searched for the stone until 7:00 a.m., and filed lost item reports and a police report. Mrs. Neece had received the ring which held the lost stone from her father. It had originally belonged to her mother. The ring was appraised on July 26, 1967, at $1,500.00. After going to different jewelers in an unsuccessful effort to replace the stone and discussing the matter with Mrs. Neece's father, petitioners *505 claimed a casualty loss deduction in the amount of $5,000 on their 1974 return. Respondent disallowed the loss in its entirety. (c) Water Damage
On their 1976 tax return, petitioners claimed an $800 casualty loss deduction with respect to two separate incidents of pipeline breakage during freezing weather. Respondent disallowed the deduction in its entirety and petitioners have offered no evidence to substantiate the claim. (3) Charitable Contributions and Medical Expenses
During the years in issue petitioners and their children belonged to St. Peter's Episcopal Church and regularly attended weekly services. For the years 1976 through 1978, petitioners claimed and respondent disallowed deductions for charitable contributions to the church and other charities as shown on Schedule 4: SCHEDULE 4
CHARITABLE CONTRIBUTIONS
1976
Amount
Amount
Amount
Claimed
Allowed
Disallowed
ORGANIZATION: St. Peters Episcopal Church
$ 500.00
$ 500.00
New Hope Foundation
326.20
326.20
St. Louis Symphony Orchestra
342.00
220.00
122.00
Salvation Army
75.00
75.00
Great Dane Club of Greater
St. Louis  15.00
15.00
Sister City Benefit
30.00
30.00
St. Louis County Police
Officers' Association  5.00
5.00
Villa Duchesne Christmas
Baskets for the Poor  31.25
31.25
St. Louis Children's Hospital
100.00
Goodwill
March of Dimes
Arts and Education Council
American Narcolepsy Association
Bonne Chance Auction
St. Rachael's School
TOTALS
$1,324.45
$320.00
$1,104.45
*506 1977
Amount
Amount
Amount
Claimed
Allowed
Disallowed
ORGANIZATION: St. Peters Episcopal Church
New Hope Foundation
600.00
600.00
St. Louis Symphony Orchestra
Salvation Army
Great Dane Club of Greater
St. Louis  Sister City Benefit
St. Louis County Police
Officers' Association  Villa Duchesne Christmas
Baskets for the Poor  St. Louis Children's Hospital
Goodwill
250.00
250.00
March of Dimes
25.00
25.00
Arts and Education Council
50.00
50.00
American Narcolepsy Association
22.00
22.00
Bonne Chance Auction
206.32
112.30
94.02
St. Rachael's School
TOTALS
[1] $1,153.32
$159.30
$994.02
1978
Amount
Amount
Amount
Claimed
Allowed
Disallowed
ORGANIZATION: St. Peters Episcopal Church
$350.00
$350.00
New Hope Foundation
425.00
425.00
St. Louis Symphony Orchestra
Salvation Army
50.00
50.00
Great Dane Club of Greater
St. Louis  Sister City Benefit
St. Louis County Police
Officers' Association  Villa Duchesne Christmas
Baskets for the Poor  75.00
75.00
St. Louis Children's Hospital
Goodwill
March of Dimes
25.00
25.00
Arts and Education Council
American Narcolepsy Association
Bonne Chance Auction
St. Rachael's School
54.00
54.00
TOTALS
[2] $979.00
$500.00
$479.00
*507 For the years 1976 through 1978, petitioners claimed and respondent disallowed deductions for medical expenses as shown on Schedule 5: SCHEDULE 5
MEDICAL EXPENSES
1976
1977
Amount
Amount
Amount
Amount
Amount
Amount
Claimed
Allowed
Disallowed
Claimed
Allowed
Disallowed
INSURANCE:
$300.00
$61.74
$238.26
$183.48
$118.85
$64.63
DOCTORS &
2,434.00
2,436.45
1,427.80
1,634.31
HOSPITALS: DRUGS:
1,152.00
1,559.08
1,595.29
1,388.45
206.84
OTHERS: Transportation
to and from
Doctors and
152.00
152.00
384.20
384.20
Hospitals
Glasses
76.38
76.38
Ambulance Service
98.62
98.62
1978
Amount
Amount
Amount
Claimed
Allowed
Disallowed
INSURANCE:
$554.15
$554.15
DOCTORS & HOSPITALS:
890.50
898.50
DRUGS:
1,037.56
1,037.56
OTHERS: Transportation to and from
Doctors and Hospitals
Glasses
88.93
88.93
Ambulance Service
(4) *508 Capital Loss Deductions and Carryovers
On their 1972 Federal tax return petitioners claimed a $5,000 long-term capital loss carryover from years beginning before 1970, a $1,200 short-term capital loss carryover from years beginning before 1970, and a $1,793 short-term capital loss resulting from a 1972 nonbusiness bad debt due from Charles Licavoli. The 1972 return was examined by an agent of respondent, who made small changes in petitioners' deductions for business expenses, depreciation and medical expenses. No changes were made to the $1,793 bad debt claimed in 1972 or to any of the capital loss carryovers. The net result of the audit for 1972 was a net adjustment of $319.97 in favor of petitioners. On their 1973, 1974 and 1975 tax returns petitioners claimed and respondent disallowed deductions for capital losses carried over from prior years. To substantiate these deductions, petitioners rely on respondent's report of audit changes for 1972. On their 1976 return, petitioners claimed a nonbusiness bad debt due from "Robt. Reeves" in the amount of $12,017. From this amount petitioners deducted and respondent disallowed $1,000 in 1976; $2,000 in 1977; and $3,000 in *509 1978. (5) Investment Tax Credits
On their 1976, 1977 and 1978 tax returns, petitioners claimed investment tax credits for section 38 property in the respective amounts of $937.00, $382.00 and $257.42. A portion of the credit taken in 1976 resulted from the purchase by Gay F. Neece of an automobile which petitioners concede was not used in a trade or business. Petitioners have not identified any other item for which the credits were taken. Respondent has disallowed all of the investment credits. (6) Loss of Records
Barbara Wiseman, an office auditor for respondent, requested a conference in her office with respect to petitioners' 1973 tax return. Mr. Neece and his accountant, H. Ray Rehder, were present. In their presence, Ms. Wiseman examined petitioners' 1973 tax records which had been brought to her office in a box. The records included checks, receipts, miscellaneous correspondence and a yellow legal pad containing a tally of petitioners' checks. At the conclusion of the conference, Ms. Wiseman returned the records to the box and gave it to Mr. Neece, who took it home with him. Two months after the first conference, Ms. Wiseman contacted Mr. Rehder *510 and requested to again examine petitioners' 1973 tax records. This time her request was limited to specific documents which included checks, bank statements and related items. Upon being informed of this request, Mr. Neece accumulated the necessary documents and delivered them to Ms. Wiseman's office. Two months later, Ms. Wiseman again returned the documents to Mr. Neece. Sometime later Ms. Wiseman made a third request to see the 1973 records. At this point Mr. Neece turned the audit over to his attorney, Edward R. Joyce, and the matter apparently remained at a standstill until in 1975 when the audit was expanded to include 1974 and 1975 and the examination was transferred from Ms. Wiseman to Revenue Agent Dave Crawford. Upon receipt of the assignment, Mr. Crawford attempted to examine petitioners' records for all three years. When his efforts proved to be unsuccessful, he attempted to close out the examination with the information then available but the case was returned to him after representations were made by Mr. Joyce that petitioners' records would be made available. When the records were not made available, Mr. Crawford issued an administrative summons on February 7, 1978. *511 In response to the summons, Mr. Neece and Mr. Joyce appeared before Mr. Crawford with a box containing tax documents for 1973, 1974 and 1975. In their presence Crawford prepared, executed and delivered to Joyce a detailed receipt in which the documents were identified as cancelled checks, bank statements, tally sheets, travel and other expense records for the years under examination. On July 20, 1979, Crawford checked the documents in his possession against his copy of the document receipt and finding none missing returned them to Joyce, who accepted the records without complaint and on Crawford's copy of the receipt acknowledged the return of all documents submitted for examination. At some later date, Mr. Neece picked up the records from Joyce's office and replaced them in storage. Petitioners contend that some of their records for 1973, 1974 and 1975 are missing because of the negligent manner in which the records were handled by respondent's agents. Respondent denies any negligence with respect to the records and contends that all of the records were returned to petitioners or their counsel. OPINION (1) Automobile, Travel and Employee Business Expenses
(a) Automobile *512 Expenses
In general, section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred by a taxpayer during the taxable year in carrying on a trade or business. This includes transportation expenses of an employee, which includes an employee's expenses of operating his automobile in connection with his employment. Section 62(2)(C); sections 1.62-1(c)(4) and 1.62-1(g), Income Tax Regs. The taxpayer, however, has the burden of proof with respect to the nature and amount of the deduction. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a). See section 1.162-17(c), Income Tax Regs.
For the years under consideration, the automobile expenses claimed by petitioners and the treatment of such expenses by respondent were as follows: Petitioners
Respondent
Year
Claimed
Allowed
Disallowed
1973
$4,069.42
$2,528.55
$1,540.87
1974
4,602.18
1,709.52
2,892.66
1975
4,914.90
3,627.51
1,287.39
1976
4,195.94
1,635.85
2,560.09
1977
4,105.97
1,581.34
2,524.63
1978
1,193.52
214.11
979.41
The record contains no evidence pertaining to additional deductions for automobile expenses *513 except the self-serving and uncorroborated testimony of Mr. Neece to the effect that he washed his car an average of two times a week at a cost of approximately $1.50 to $2.00 per wash. Consequently, we are unable to find that petitioners are entitled to any deduction for automobile expenses in excess of those allowed by respondent. (b) Travel and Employee Business Expenses
This issue involves the deductibility and substantiation of expenditures under sections 162(a) and 274(d). As stated before, section 162(a) generally allows a deduction for all ordinary and necessary expenses paid or incurred by a taxpayer in carrying on a trade or business. Whether an expenditure is business or personal or is ordinary and necessary are questions of fact on which the taxpayer has the burden of rpoof. Commissioner v. Heininger,320 U.S. 467 (1943); Chapman v. Commissioner,48 T.C. 358 (1967); Bennett's Travel Bureau, Inc. v. Commissioner,29 T.C. 350 (1957). Section 274(d) provides in part: (d) Substantiation Required.--No deduction shall be allowed-- (1) under section 162 or 212 for any traveling expense (including meals and lodging *514 while away from home), (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, amusement, or recreation, or with respect to a facility used in connection with such an activity, or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility, or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility, or receiving the gift. * * * [Emphasis added.] With respect to deductions described in section 274(d), the taxpayer is required to substantiate each expenditure by either "adequate records" or other "sufficient evidence" and any deduction not substantiated in this manner will be disallowed. Sanford v. Commissioner,50 T.C. 823, 828 (1968), affd. per curiam *515 412 F.2d 201 (2d Cir. 1969), cert. denied 396 U.S. 841 (1969). Adequate records include "[a]n account book, diary, statement of expense or similar record * * * made at or near the time of the expenditure," and "documentary evidence * * * [such as invoices or receipts] which, in combination, are sufficient to establish each element of an expenditure." Section 1.274-5(c)(2), Income Tax Regs. In the absence of such records, "the taxpayer may alternatively satisfy the substantiation requirements by coming forward with 'corroborative evidence sufficient' to support his own statement containing specific information in detail as to each element of the expenditure, or such elements as have not been substantiated by adequate records." Sanford v. Commissioner,50 T.C. at 829. In this case petitioners admit that they do not have adequate records for 1973, 1974 and 1975 but claim that part of their records for these years were lost during the audit by respondent's agents. Petitioners apparently rely on section 1.274-5(c)(5) of the regulations for some measure of relief. That section provides that: *516 Where the taxpayer establishes that the failure to produce adequate records is due to the loss of such records through circumstances beyond the taxpayer's control, such as destruction by fire, flood, earthquake, or other casualty, the taxpayer shall have a right to substantiate a deduction by reasonable reconstruction of his expenditures. Fom the list of documents shown on the receipt prepared by Mr. Crawford in February 1978, it appears that petitioners had substantial records at that time for 1973, 1974 and 1975. However, from the record as a whole we are unable to conclude that such records were adequate within the meaning of section 274(d) or that the records were lost or misplaced by respondent's agents. First, with respect to the adequacy of such records, it is noted that the records for 1973 were not sufficient to permit Ms. Wiseman to conclude her audit even though she examined them twice and had them in her possession for over two months. Secondly, the records for all three years were such that Mr. Crawford was unable to complete his examination in 18 months. Thirdly, and more important, with respect to the loss of the records, it is noted that when Mr. Crawford returned *517 them to Mr. Joyce no question was raised as to any loss and Mr. Joyce acknowledged the return of all of the records turned over to Mr. Crawford. Finally, petitioners' evidence with respect to the loss is somewhat contradictory because Mr. Neece testified that the loss was first discovered shortly before trial, but the petitions contain allegations made two years earlier that the records were lost through the negligence of respondent's agents. Under the circumstances outlined above, we are unable to determine whether the records were adequate within the meaning of section 274(a) or how and by whom they were lost. Furthermore, the unintentional loss of the records even by respondent's agents would not shift the burden of going forward with the evidence to respondent. American Police & Fire Foundation, Inc. v. Commissioner,81 T.C. 699 (1983).Such a loss would merely permit the use of secondary evidence by petitioners to carry their burden of proof. Malinowski v. Commissioner,71 T.C. 1120, 1125 (1979). The record, however, contains no evidence of any attempt by petitioners to reconstruct the cancelled checks, invoices and other documents that were *518 allegedly lost. See Gizzi v. Commissioner,65 T.C. 342, 346 (1975). It is also noted that petitioners' claim of lost records pertains only to the years 1973, 1974 and 1975 and does not extend to the following three years. Nevertheless, their records for those years are no more adequate than those produced for 1973, 1974 and 1975. We are unable to conclude, therefore, that under sections 162(a) and 274(a) petitioners are entitled to deduct any travel and employee business expenses in addition to those allowed by respondent on Schedule 2. In addition to the foregoing, we also note that petitioners have failed to explain why the deductions for secretarial services, travel and entertainment which were disallowed by respondent were not included within Paramount's reimbursement policy. Reimbursable employee expenses for which no reimbursement is claimed do not constitute ordinary and necessary expenses under section 162(a). Kennelly v. Commissioner,56 T.C. 936, 943 (1971), affd. without opinion 456 F.2d 1335 (2d Cir. 1972). In support of the deduction for office and storage space in the home, petitioners have offered no specific *519 evidence regarding the amount or the relationship of such space to the employment of Mr. Neece or to the use of the home, the pool and the watch dog for business purposes. Mr. Neece merely testified that in his opinion 25 percent of the house including the pool and the dog was devoted to business purposes. However, his testimony was vague, indefinite, uncorroborated and, to some extent, contradictory. For instance, the 25 percent of the house which was purportedly devoted to business included a garage built in 1972 which Mr. Neece testified was used entirely for business purposes between 1972 and 1976. However, his list of items stolen from the garage included a number of obviously personal items such as a lawn mower, bicycle, circular saw, tools, a wagon, swim fins and books on boating. From the record before us we are unable to determine that any part of the home including the pool and the watch dog was devoted to business and therefore we are unable to sustain any of these deductions in excess of those allowed by respondent. With respect to the items shown on Schedule 3 which petitioners deducted as "other business expenses" the record contains no evidence to refute respondent's *520 findings and, therefore, his disallowance of these deductions is sustained. (2) Casualty Losses
Under section 165(c)(3), an individual taxpayer may deduct losses of nonbusiness property arising from fire, storm, or other casualty, or from theft, to the extent that the loss from each such incident exceeds $100. The loss sustained is the difference between the fair market value of the property immediately before the casualty and its value immediately thereafter, not to exceed, however, the adjusted basis of the property. Helvering v. Owens,305 U.S. 468, 471 (1939); Pfalzgraf v. Commissioner,67 T.C. 784, 787 (1977). The burden of proof as to the amount and the deductibility of the loss is upon the taxpayer. Burnet v. Houston,283 U.S. 223 (1931). (a) Theft of Personal Property
The parties agree that a theft of property occurred for which a casualty loss is deductible in 1973 under section 165(c)(3). They disagree as to the amount of the deduction. Petitioners contend that their total loss is equal to the difference between the replacement cost of the stolen items ($9,241.74) less the amount received from *521 their insurance company ($8,485.73). Respondent contends that their total loss is the difference between the fair market value of the property ($8,985.73) less the amount received from the insurance company. We agree with respondent. See Hernandez v. Commissioner,72 T.C. 1234, 1240 (1979). (b) Loss of Black Opal Stone
Respondent does not dispute that Mrs. Neece's black opal stone disappeared in Las Vegas, Nevada, on May 17, 1974. He merely argues that petitioners have failed to prove the amount of the loss or that the loss was the result of a casualty. In support of the $5,000 deduction claimed as a result of the loss of the stone, petitioners produced an appraisal in the amount of $1,500. The appraisal was made by a jewelry store approximately seven years before the loss and covered not only the stone but the entire ring which also included, in addition to the stone, 14 sapphires and 26 diamond chips. At trial, Mr. Neece also offered by way of hearsay certain information regarding the stone's value which he allegedly gained from unnamed jewelers and his father-in-law. All such evidence is totally unreliable and cannot be accepted as being any indication *522 of the value of the stone on the date of the loss. Furthermore, the record contains no evidence as to Mrs. Neece's basis in the stone. In the absence of proof of basis, the casualty loss could not be computed even if we knew the value of the stone. Millsap v. Commissioner,46 T.C. 751, 760 (1966), affd. without discussion of this issue, 387 F.2d 420 (8th Cir. 1968); Towers v. Commissioner,24 T.C. 199, 239 (1955). From the record before us, our findings with respect to basis are limited to the fact that the ring was owned at some time in the past by Mrs. Neece's mother and was transferred to Mrs. Neece by way of her father. There is no indication of how the transfers were made to Mrs. Neece's father or from him to Mrs. Neece whether by gift, inheritance or purchase. Consequently, we are unable to determine whether a casualty loss was incurred or, if so, the amount thereof and respondent's disallowance of the loss is sustained. [5]
(c) Water Damage
On their 1976 tax return, petitioners claimed a casualty loss deduction allegedly resulting from the breakage *523 of water pipelines. However, at trial they produced no evidence in support of this issue and it is deemed abandoned by them. (3) Charitable Contributions and Medical Expenses
For the years 1976, 1977 and 1978, the deductions claimed by petitioners for charitable contributions and the amounts thereof which were allowed and disallowed by respondent appear on Schedule 4. The same information with respect to petitioners' deductions for medical expenses is set out on Schedule 5. Here again, the record contains no evidence with respect to these items except the vague, uncorroborated testimony of Mr. Neece from which we are unable to determine or even reasonably estimate the amount, if any, of the correct amount of such deductions. Petitioners, therefore, have failed to carry their burden of proving that they are entitled to any deductions for contributions or medical expenses in excess of those allowed by respondent on Schedules 4 and 5. Welch v. Helvering,290 U.S. 111 (1933). (4) Capital Loss Deductions and Carryovers
(a) For 1973, 1974 and 1975
An individual taxpayer may carry over net capital losses sustained in one tax year to later *524 tax years pursuant to section 1212(b). The taxpayer, however, has the burden of proving the incurrence of the capital losses and his entitlement to the deductions. Welch v. Helvering,supra.
In 1973, 1974 and 1975 petitioners claimed capital loss deductions carried over from prior years. The capital losses were identified as (1) a nonbusiness debt due from Charles Licavoli which became worthless in 1972, (2) a nonbusiness debt due from Tali Corporation that became worthless prior to 1970, and (3) stock in Tali Corporation that became worthless prior to 1970. Deductions for all three of the capital losses were taken by petitioners and allowed by respondent on the 1972 return even though other changes were made on the 1972 return. For each of the years 1973, 1974 and 1975, respondent concedes the allowance of the capital loss carryovers attributable to the nonbusiness bad debt due from Charles Licavoli. He disallowed the carryovers from the other two capital losses for lack of substantiation. In support of their other capital loss carryover deductions in 1973, 1974 and 1975, petitioners produced no evidence other than respondent's audit report for 1972 *525 in which the carryovers were allowed. Respondent, however, is not estopped from raising an issue merely because he failed to do so in a previous year. Rose v. Commissioner,55 T.C. 28, 31 (1970). See Massaglia v. Commissioner,286 F.2d 258, 262 (10th Cir. 1961), affg. 33 T.C. 379 (1959); Ward v. Commissioner,240 F.2d 184, 185 (6th Cir. 1957), affg. 25 T.C. 815 (1956); Lozoff v. United States,266 F. Supp. 966, 971 (E.D. Wis. 1967), affd. 392 F.2d 875 (7th Cir. 1968). Inasmuch as petitioners have failed to offer any proof substantiating the losses underlying the carryovers from years prior to 1972, respondent's disallowance of the capital loss carryovers except for the loss attributable to the debt due from Charles Licavoli is sustained. Welch v. Helvering,supra.
(b) For 1976, 1977 and 1978
In 1976, 1977 and 1978, petitioners claimed capital loss deductions which they attributed to the worthlessness in 1976 of a nonbusiness debt due from a certain Robert Reeves. Respondent disallowed the deductions for lack of substantiation of the loss. *526 Petitioners again bear the burden of proof. Welch v. Helvering,supra.
Petitioners offered no evidence with regard to the debt except vague, self-serving testimony by Mr. Neece to the effect that the debtor was discharged in bankruptcy and that petitioners received no distributions from the bankrupt estate. In an attempt to corroborate Mr. Neece's testimony petitioners produced a statement indicating that a certain Irma Reeves was discharged in bankruptcy on September 14, 1976. In the absence of any evidence as to the nature and amount of the alleged debt and the bankruptcy of Robert Reeves, we have no basis for disagreeing with respondent's determination. Therefore, his disallowance of the capital loss deductions in 1976, 1977 and 1978 attributable to the debt due from Robert Reeves is sustained. (5) Investment Tax Credits
Petitioners claimed and respondent disallowed investment tax credits in 1976, 1977 and 1978 under section 38. Here again, petitioners offered no proof which tended to support their claims for investment credits and failed to identify the items on which the credits were taken except for an automobile purchased in 1976. However, *527 they now concede that this automobile was not used in a trade or business and was therefore not section 38 property. Respondent's disallowance of the investments is sustained because petitioners have failed to carry their burden of proof. Welch v. Helvering,supra.
(6) Negligence
Respondent determined that additions to tax are due from petitioners for 1976, 1977 and 1978 under section 6653(a) for negligence or the intentional disregard of applicable rules and regulations. Petitioners have the burden of proving that respondent's determination is incorrect. Bixby v. Commissioner,58 T.C. 757, 791 (1972). Petitioners offered no proof on this issue and have failed to address the same on brief. However, in view of the deductions which they claimed in 1976, 1977 and 1978 for capital losses which they made no attempt to prove and their attempt to claim investment credits on assets not used in a trade or business, it is apparent that they were negligent to say the least in the preparation of their returns for these years. Consequently, respondent's determination with respect to the additions to tax is sustained. To reflect the foregoing *528 as well as the concessions made by the parties, Decisions will be entered under Rule 155.
Footnotes
1. The following cases are consolidated herewith: Robert F. Neece and Gay F. Neece, docket No. 16602-81; and Robert F. Neece, docket No. 16603-81.↩
2. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise provided. ↩
3. The deficiency and addition to tax for 1978 is due from petitioner Robert F. Neece only (docket No. 16603-81). The deficiencies and additions to tax for all other years are the joint liability of both petitioners (docket Nos. 14786-81 and 16602-81).↩
4. All references to petitioner in the singular will be to Robert F. Neece, unless otherwise indicated.↩
1. The business use amount allowed, $311.12, divided by 79 percent. ↩
2. The stipulations vary as to the total amount disallowed by respondent, at times incorrectly stating the amount as $1,573.89. ↩
3. The business use amount allowed, $1,103.48, divided by 51 percent. ↩
4. The business use amount allowed, $594.28, divided by 97 percent. ↩
5. The business use amount allowed, $180.20, divided by 51 percent. ↩
6. The business use amount allowed, $52.78, divided by 97 percent.↩
2. The stipulations incorrectly add the expenses to arrive at a total amount allowed of $4,619.96. ↩
1. Petitioners have conceded that an additional $2,798.06 in claimed automobile deductions related to Mrs. Neece's use of a 1976 Lincoln Continental are not deductible in 1976. ↩
3. Petitioners have conceded that an additional $871.10 in claimed automobile deductions related to Mrs. Neece's use of a 1976 Lincoln Continental are not deductible in 1977. ↩
4. In claiming the automobile deduction, petitioner, Robert Neece, incorrectly misstated the total by $10.00. This error arises from a discrepancy in the amount claimed for the Triple A Membership. ↩
5. The stipulations very as to the total amount substantiated by $10.00.↩
1. This amount varies by $32.80 from the amount disallowed in respondent's notice of deficiency. ↩
2. The stipulations vary by $ .36. ↩
3. The stipulations incorrectly add depreciation and vary by $ .49. ↩
4. This amount varies by $ .16 from the amount disallowed in respondent's notice of deficiency.↩
1. This amount does not include $2,798.06 in disallowed expenses related to Mrs. Neece's automobile (see Schedule 2 footnote 1). The combined total automobile disallowance also varies by $278.12 from respondent's notice of deficiency. ↩
3. This amount does not include $871.10 in disallowed expenses related to Mrs. Neece's automobile. (See Schedule 2 footnote 3). The combined total automobile disallowance also varies by $275.00 from respondent's notice of deficiency. ↩
2. The stipulations vary by $ .10 as to the total amount of disallowed depreciation. ↩
4. The stipulations vary by $ .16 as to the total other business expenses disallowed. ↩
5. The total amount of other business expenses varies by $ .99 on petitioner's tax return, due to an error in addition.↩
1. This total varies by $100.00 from the total calculated in the exhibit presented at trial.↩
1. This stipulated amount varies from the $1,778.00 claimed by petitioners on their 1977 tax return. ↩
2. This total varies from the stipulations by $1.00.↩
5. See Bowman v. Commissioner,T.C. Memo. 1979-432↩.