T.C. Memo. 1997-84

UNITED STATES TAX COURT

JANE B. OLIVER AND ROBERT P. OLIVER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 19840-94.                    Filed February 19, 1997.

Jane B. Oliver and Robert P. Oliver, pro sese.

<u>Charles Pillitteri</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SCOTT, <u>Judge</u>:  Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax for the taxable years 1990 and 1991 as follows:

| Year | Deficiency | Additions to Tax and Accuracy-Related Penalties | |
| | | Sec. 6651(a)(1) | Sec. 6662 |
|---|---|---|---|
| 1990 | $29,155 | $7,988 | $5,831 |
| 1991 | 55,873 | 11,730 | 11,175 |

Some of the issues were conceded or settled by the parties. The issues presented for decision are: (1) Whether petitioners are entitled to casualty loss deductions for the taxable year 1991 caused by heavy rain and wind damage to their home and personal property which occurred in 1988 and for flooding which occurred in 1991 and, if so, the amounts of the losses sustained; (2) whether petitioners are entitled to a casualty loss carryover deduction for the taxable year 1990 caused by the heavy rain and wind damage which occurred in 1988; (3) whether petitioners are entitled to a business casualty loss deduction for computer and computer-related equipment for the taxable year 1991 caused by the flooding which occurred in that year; (4) whether petitioners are entitled to a casualty loss deduction for the taxable year 1991 for damage caused by broken water pipes in their kitchen; (5) whether petitioners are entitled to relief under section 165(i)[1] with respect to casualty losses suffered by them during the taxable year 1991; (6) whether petitioners failed to report a casualty gain for the taxable year 1991 arising from flooding in

---

[1] All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise indicated.

February of 1991; (7) whether petitioners are entitled to Schedule C business expense deductions for legal and professional expenses of $10,000 claimed for 1990 and $13,000 for 1991; (8) whether petitioners failed to report interest income of $2,824 for 1990; (9) whether petitioners are entitled to Schedule C business expense deductions for self-employment tax of $7,849 for 1990 and $10,246 for 1991; (10) whether the assessment of a deficiency for the taxable year 1990 is barred by the 3-year period of limitations provided in section 6501(a); (11) whether petitioners are liable for the additions to tax pursuant to section 6651(a)(1) for failure to file timely Federal income tax returns for 1990 and 1991; and (12) whether petitioners are liable for accuracy-related penalties pursuant to section 6662(a) for 1990 and 1991.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly. The stipulation of facts and the attached exhibits are incorporated herein by this reference.

At the time the petition was filed in this case, Jane B. Oliver and Robert P. Oliver resided in Greenville, Mississippi. Petitioners, who are cash basis taxpayers, filed their joint Federal income tax returns for the taxable years 1990 and 1991 on August 19, 1991, and July 20, 1992, respectively.

Claimed Casualty Loss Deductions

    A.  <u>Rain and Wind Damage to Home and Personal Property in 1988</u>

    In February 1988, petitioners contracted for the construction of an addition to their home.  Because the contractors informed petitioners that they were not bonded in case of a loss, petitioners contacted their homeowners' insurance agent, Eustis, Dees & Outzen, to make sure that any potential construction-related losses were covered by their existing homeowners' insurance policy.  Petitioners were told by their insurance agent that any construction-related losses were covered by their existing policy.

    In preparation for construction to the upper floor of petitioners' home, a portion of the roof was removed during the day on March 10, 1988, and, at the end of the work day, the open area of the roof was covered with a protective cloth.  In either the late evening of March 10, 1988, or the early morning of March 11, 1988, high winds blew off the protective cloth covering the opening in the roof and rain water entered through the opening, flooding the home.  The next day an insurance adjuster from United States Fidelity & Guaranty Co. (USF&G), for which Eustis, Dees & Outzen was an independent agent, appraised the damage and advised petitioners that their existing homeowners' insurance policy did not cover the loss.  Despite their denial of coverage, USF&G offered petitioners $5,000, as a good-faith gesture, which they refused.

At USF&G's request, Mrs. Oliver and her secretary prepared and submitted to USF&G a Personal Property Inventory Booklet listing items of personal property which petitioners claimed were damaged by the rain water. The booklet lists the replacement cost and the cost to repair the damaged personal property as $107,330.60. Petitioners received invoices in 1987 and 1988 which show the original cost of some of their furniture was $10,754.19. In June and July 1988, a dry cleaning service issued invoices to petitioners totaling $3,529.85 for cleaning some of their personal property.

In May 1988, petitioners obtained an estimate from John Bernardi, an employee at a local lumber company, of the claimed damage to their home and provided it to USF&G. The estimate totals $34,998. In February 1993, petitioners obtained an estimate from Kenny Hester, a local builder, of the claimed damage to their home, which agrees with John Bernardi's estimate of the cost of materials, but adds between $4,000 to $5,000 for labor. In August 1988, petitioners submitted a proof of loss statement to USF&G claiming damage totaling $142,728.94.

USF&G refused to pay the amount claimed by petitioners on the proof of loss statement. Fidelity and Guaranty Insurance Underwriters, Inc. (FGIU), an affiliate of USF&G, filed a complaint for declaratory judgment against petitioners, seeking an adjudication that the claimed personal property damage was not covered by the homeowners' insurance policy due to a breach of

policy conditions by petitioners and tendering the full amount owed ($12,457.62) under the dwelling portion of the policy into the registry of the court. The civil litigation came before Magistrate Judge Jerry Davis, U.S. District Court for the Northern District of Mississippi, who appointed an expert to evaluate the damage to petitioners' personal property. The expert found that out of 230 disputed items of personal property, 119 items had no apparent water damage and 62 items had possible or probable water damage. The expert found it was impossible to determine whether the remaining 49 items had suffered water damage.

In 1991, the litigation between petitioners and FGIU was settled, with petitioners receiving a gross recovery of $44,577.92. After reduction for attorney's fees and expenses, petitioners' net recovery was $32,040.37, which amount included the $12,457.62 initially deposited into the registry of the court by USF&G to cover the full amount owed under the dwelling portion of the policy, and $19,582.75 representing the net amount received by petitioners for the settlement of the dispute over the claimed personal property damage.

Meanwhile, the addition to petitioners' home was completed. Before the heavy rain and wind in 1988 which caused petitioners' claimed casualty loss, their home was approximately 3,700 square feet. After the addition to their home was completed, it was approximately 9,000 square feet.

On their joint Federal income tax return for the taxable year 1988, petitioners claimed a casualty loss deduction of $142,729 relating to the claimed storm damage, consisting of damage to their home in the amount of $34,998.34, damage to its contents of $107,330.60, and cleanup costs of $400.

Respondent sent petitioners a notice of deficiency for 1988 disallowing the claimed $142,729 casualty loss deduction because a schedule attached by petitioners to that return showed that they had been reimbursed by their insurance company for the full amount of the casualty loss. Petitioners paid the deficiency in income tax determined by respondent for 1988.

Respondent and petitioners agree that, pursuant to section 1.165-1(d)(2)(i), Income Tax Regs., the casualty loss deduction in the amount of $142,729, before insurance reimbursement, claimed by petitioners on their 1988 return is properly before the Court for the taxable year 1991. The amount of reimbursement received by petitioners for the casualty loss which occurred in 1988 could not be ascertained until the civil litigation between petitioners and FGIU was settled in 1991.

At trial, petitioners claimed for the first time that the amount of loss relating to the claimed storm damage in 1988 was $193,462.16, before insurance reimbursement.

On their Federal income tax return for the taxable year 1991, petitioners reported $32,040 received by them in settlement of the USF&G litigation as "other income". In the notice of

deficiency respondent determined that petitioners' income for 1991 should be reduced by the $32,040. The parties agree to the reduction in income. Petitioners' receipt of the $32,040 will be considered in computing the casualty loss deduction to which petitioners may be entitled in 1991 caused by the heavy rain and wind which occurred in 1988.

Petitioners claimed a deduction of $119,435 on their joint Federal income tax return for the taxable year 1989 as a "casualty carry over from 1988" relating to the $142,729 casualty loss deduction claimed by them on their 1988 return. Respondent sent a notice of deficiency to petitioners for 1989 disallowing the casualty loss carryover deduction. Petitioners filed their petition with this Court seeking a redetermination of their Federal income tax for 1989. The case was settled prior to trial. Pursuant to the settlement, petitioners conceded that they were not entitled to the casualty loss carryover deduction claimed by them for 1989 in exchange for respondent's agreement that the casualty loss deduction in the amount of $142,729 claimed by petitioners on their 1988 return was properly before the Court for the taxable year 1991.

Petitioners claimed a miscellaneous deduction in the amount of $81,643 on their joint Federal income tax return for the taxable year 1990 as a "casualty carry over from 1988-1989" relating to the $142,729 casualty loss deduction claimed by petitioners on their 1988 return. In the notice of deficiency

sent to petitioners covering 1990 and 1991, respondent disallowed the $81,643 casualty loss carryover deduction claimed by petitioners on their 1990 return, stating that they had not established that they were entitled to a casualty loss carryover for that year.

B.  Flood Damage to Home, Contents, Lawn, and Driveway in 1991

During or after 1990, petitioners increased the size of their home again, adding what they refer to as the "east wing". This brought the total area of their home to 10,000 square feet.

In February and April 1991, petitioners experienced flooding at their home.  The February flood caused damage to their home, its contents, their lawn, and their driveway.  The April flood caused damage to their home and its contents.  At the time of both floods, petitioners had flood insurance covering their home and its contents through American Bankers Insurance Co. (ABIC). Petitioners also had flood insurance covering their home and its contents through the National Flood Insurance Program (NFIP). Neither the ABIC flood insurance policy nor the NFIP flood insurance policy covered the flood damage to petitioners' lawn and driveway.

Petitioners had homeowners' insurance coverage provided by Grain Dealers Mutual Insurance Co. and National Farmers Union Standard Insurance Co., but neither of these insurance companies provided insurance coverage for flood damage.  They also had homeowners' insurance coverage provided by Kemper Insurance Co.

Soon after the February flood, Rod Parker, an insurance adjuster for ABIC, visited petitioners' home to survey the damage and determine the insurance reimbursement to which they were entitled. He calculated the full cost to repair the home as $26,168.17 and the replacement cost of the contents, less depreciation and salvage value, as $53,779.50. Based upon Mr. Parker's report, petitioners received total insurance reimbursement from ABIC of $79,978.11, consisting of $26,698.61 reimbursement for damage to the home and $53,279.50 reimbursement for damage to its contents.

In addition, petitioners received two checks, one for the damage to their home and one for the damage to its contents, in undisclosed amounts and from an undisclosed insurance company, as reimbursement for the damage caused by the February flood.

Petitioners claimed a casualty loss deduction in the amount of $176,896 on Schedule A of their 1991 income tax return. The individual casualty losses they claimed were detailed on Form 4684 attached to the return. Among the losses claimed was a loss in the amount of $156,778.20, before insurance reimbursement, for flood damage to their home on February 18, 1991. Worksheets prepared by petitioners in support of this loss contained mathematical errors and duplications of the claimed losses relating to individual items.

At trial, petitioners reduced the amount of loss claimed for the flood damage in February of 1991 to $105,704.87, before

insurance reimbursement, consisting of a $47,502.59 loss claimed for damage to their home, including their lawn and driveway, and a $58,202.28 loss claimed for damage to its contents. Of the $47,502.59 loss claimed, $11,603.75 was attributed to damage to their home, $8,398.84 to their lawn, and $27,500 to their driveway.

Petitioners calculated the $11,603.75 claimed loss to their home by totaling the cost of repairs they claim to have made to their home as a result of the February flood. They received invoices totaling $1,194 for cleaning services performed at their home and wrote checks totaling $1,285 for repairs performed at their home after the February flood.

Petitioners calculated the $8,398.84 claimed loss to their lawn by totaling the amount they claimed to have spent having their lawn installed and the amount they claimed to have spent having it repaired. Petitioners received statements and an invoice totaling $3,862.25 from lawn supply stores prior to 1991. They wrote checks totaling $195 to lawn supply stores prior to 1991. Petitioners received a statement totaling $1,308.07 from a lawn supply store recording purchases made after the February flood. They wrote checks totaling $2,105.46 to lawn supply stores and lawn repairmen after the February flood.

Petitioners calculated the $27,500 claimed loss to their driveway by totaling the estimated cost to repair multiple cracks and gaps in their driveway caused by the February flood. In

1994, 3 years after the 1991 flood, petitioners obtained an estimate in the amount of $27,500 to repair their driveway. They have not repaired any part of the damage to their driveway.

Petitioners calculated the $58,202.28 claimed loss to the contents of their home by totaling the claimed original cost of each item damaged in the February flood. Petitioners received invoices totaling $657 for the cost to repair some of the contents of their home after the February flood.

Petitioners included the claimed original cost of four Tandy computers with hard drives, one Tandy microcomputer, and three Tandy printers, totaling $23,700, as part of the $58,202.28 claimed loss to the contents of their home. Petitioners had four computers at their home at the time of the February flood. One of the four computers was used in Mrs. Oliver's business. The other three computers were for the personal use of petitioners' children, and two of them had been previously used in Mrs. Oliver's business.

Petitioners had been depreciating on their Federal income tax returns two of the three computers used by their children for personal purposes, and the one computer used in Mrs. Oliver's business. They claimed depreciation related to three computers, three printers, and a hard disk drive in amounts totaling $1,240 on each of their joint Federal income tax returns for the taxable years 1988, 1989, and 1990. Petitioners claimed a section 179

deduction for a hard disk drive in the amount of $1,500 on their joint Federal income tax return for the taxable year 1988.

Among the individual casualty losses detailed by petitioners on Form 4684 attached to their 1991 return were a loss in the amount of $8,565 for claimed damage to a 1984 Nissan 300ZX automobile and a loss in the amount of $11,000 for claimed damage to a 1989 Honda Accord automobile, both caused by the February flood.

The N.A.D.A. Official Used Car Guide (NADA) lists an average retail value for various automobile models depending on the automobile's age and features. NADA also provides a Low Mileage Table which lists premiums to be added to the average retail values of low mileage automobiles. NADA lists the average retail value of a 1984 Nissan 300ZX Coupe Turbo GL as $6,525, and the low mileage premium to be added to a standard size car with between 7,501 and 15,000 miles as $2,400, totaling $8,925.

Soon after the flood in April 1991 damaged petitioners' property, Rod Parker, an insurance adjuster for ABIC, visited their home to survey the damage and determine the insurance reimbursement to which they were entitled. He calculated the full cost to repair the home as $28,425.39 and the replacement cost of the contents, less depreciation and salvage value, as $12,187. Based upon Mr. Parker's report, petitioners received insurance reimbursement from ABIC of $39,059.91, consisting of

$27,372.91 reimbursement for damage to their home and $11,687 reimbursement for damage to the contents.

In addition, petitioners received two checks, one for the damage to their home and one for the damage to its contents, in undisclosed amounts and from an unidentified insurance company, as reimbursement for the damage caused by the April flood.

Among the individual casualty losses detailed by petitioners on Form 4684 attached to their 1991 return was a loss in the amount of $143,064.34, before insurance reimbursement, for damage to their home caused by the April flood.  Worksheets prepared by petitioners in support of this claimed loss contained numerous duplications of individual items which they had included in their claimed loss as a result of the February flood.

At trial, petitioners reduced the amount of loss claimed for flood damage to their home in April of 1991 to $99,383.28, before insurance reimbursement, consisting of a $79,863.28 loss claimed for damage to their home and a $19,520 loss claimed for damage to its contents.

Petitioners calculated the $79,863.28 claimed loss to their home by totaling the cost of repairs they claim to have made to their home as a result of the April flood.  They received a statement and invoices totaling $43,080.59 for repairs performed at their home after the April flood.  They wrote checks totaling $22,196.80 to various businesses for repairs performed at their home after the April flood.

Petitioners calculated the $19,520 claimed loss to the contents of their home by totaling the replacement cost of the contents damaged in the April flood determined by the insurance adjuster. However, they erroneously arrived at this total because the insurance adjuster actually calculated the replacement cost of the contents of their home as $23,704. Petitioners received an invoice totaling $231.03 for the cost to replace some of their telephone equipment after the April flood.

In the notice of deficiency respondent disallowed the casualty loss deduction in the amount of $176,896 claimed by petitioners on their 1991 return, stating that they had not established that the lesser of the decrease in the fair market value of their property as a result of the 1991 floods or the adjusted basis of their property exceeded their insurance reimbursement. Respondent also determined that petitioners' income for the taxable year 1991 should be increased by $14,763, stating that the insurance reimbursement received by them because of the February flood exceeded their sustained loss caused by that flood by that amount.

On Schedule C of their 1991 return, petitioners claimed a business casualty loss in the amount of $6,880. The total business casualty loss claimed by them was detailed on Form 4684 attached to their 1991 return, consisting of losses in the amounts of $3,000 for a Tandy computer, $750 for a Tandy hard disk drive, $530 for a Tandy printer, and $2,600 for medical

billing software. Because the computer was used by petitioners for business purposes, their ABIC insurance policy did not cover the loss.

Petitioners had been depreciating the Tandy computer, Tandy printer, and Tandy hard disk drive since the taxable year 1988. They claimed depreciation related to three computers, three printers, and a hard disk drive in amounts totaling $1,240 on each of their Federal income tax returns for the taxable years 1988, 1989, and 1990. It is not clear which of the computers petitioners had been depreciating was the one for which the $6,880 business casualty loss was claimed.

In the notice of deficiency respondent disallowed the business casualty loss deduction in the amount of $6,880 claimed by petitioners on their 1991 return, stating that they had not established that the lesser of the decrease in the fair market value of their computer(s) as a result of the 1991 floods or their adjusted basis in the computer(s) exceeded their insurance reimbursement.

In 1991, the water pipes in petitioners' kitchen broke. They received reimbursement in the amount of $7,744.69 from Kemper Insurance Co. for the damage to the pipes. Their ABIC insurance policy did not cover the damage to the pipes in the kitchen because they were located below the flood water line. At trial, petitioners claimed for the first time that they had incurred a casualty loss of $12,566.62 in 1991, before insurance

reimbursement, because of the broken pipes in their kitchen. The claim is separate and apart from the claimed casualty losses due to flood damage that year.

Petitioners calculated the $12,566.62 claimed loss to their kitchen pipes by totaling the amount they claim to have spent repairing the damage caused by the broken pipes. They received an invoice and a statement totaling $2,175.72 for repairs performed as a result of their broken kitchen pipes.

Washington County, Mississippi, the county in which petitioners lived in 1991, was declared a Presidential disaster area as a result of the floods in February and April of 1991. At trial, petitioners claimed that they are entitled to relief under section 165(i) with respect to casualty losses suffered by them during 1991.

Claimed Deductions for Legal and Professional Expenses

On Schedule C of their Federal income tax returns for 1990 and 1991, petitioners claimed deductions for business legal expenses of $10,000 in 1990 and $13,000 in 1991. In respondent's notice of deficiency the claimed business expense deductions for legal fees were disallowed on the ground that petitioners had not established that they constituted ordinary and necessary business expenses.

Beginning in 1989, Mrs. Oliver was represented by John D. Delgado, an attorney, in a criminal case which arose out of her activity of keeping the books of Dr. Oliver, a physician.

Petitioners paid $10,370.80 for legal fees to Mr. Delgado on September 18, 1989.

In 1990, Dr. Oliver treated a child at his home for injuries sustained while he was playing with petitioners' son. As a result, a lawsuit was filed against Dr. Oliver personally and in his professional capacity in which the plaintiff alleged that Dr. Oliver had acted unethically when he treated the child. In settlement of the lawsuit, petitioners sent a check on June 29, 1990, in the amount of $6,000 to the plaintiff's attorney. Mr. Gaines S. Dyer, the attorney who represented Dr. Oliver in the case, did not charge petitioners a fee for his legal services.

Petitioners constructed a landfill on their property in response to the flooding they experienced in February and April of 1991. In January 1992, a neighbor filed a lawsuit against them in response to their construction of the landfill. As a result of the lawsuit, petitioners paid damages to their neighbor totaling $4,500 in 1992 and legal fees to their attorney totaling $1,500 in 1992.

Interest Income

Information returns provided to the Internal Revenue Service for the taxable year 1990 show that petitioners received $3,401 interest income in 1990, consisting of $633 interest income from Allstate Life Insurance Co., $368 from Sunburst Bank, $900 from Planters Bank & Trust Co., and $1,500 from Charles Schwab and Co., Inc. Petitioners also received $11,339 interest income from

J. Peeples Trust and $3,212 from their J. Masters note.  Thus, petitioners received a total of $17,952 interest income in 1990.

On their 1990 Federal income tax return, petitioners reported $15,128[2] interest income, consisting of $345 from Sunburst Bank, $172 from Planters Bank & Trust Co., $11,339 from J. Peeples Trust, and $3,212 from their J. Masters note.

In the notice of deficiency, respondent increased petitioners' income by $2,824, stating that they received interest income of $17,952 in the taxable year 1990, rather than $15,128 as reported on their 1990 return.

Self-Employment Taxes

Petitioners reported self-employment tax on their Federal income tax returns for 1990 and 1991 in the amounts of $7,848.90 and $10,246.60, respectively.  They claimed Schedule C deductions for self-employment tax on the returns in the amounts of $7,848.90 and $10,246.60, respectively.

Through adjustments made to petitioners' 1990 and 1991 returns at the Memphis Service Center, petitioners were allowed to deduct one-half of the self-employment tax reported by them on their 1990 and 1991 returns.

---

[2]  Petitioners erroneously calculated the $15,128 interest income reported on their Federal income tax return for the taxable year 1990.  The individual items of interest income detailed by petitioners on Schedule B attached to their 1990 return total $15,068, which is $60 less than $15,128.  Thus, in the notice of deficiency respondent determined that petitioners failed to report interest income in the amount of $2,824, which is $60 less than the amount of interest income petitioners failed to disclose on Schedule B attached to their 1990 return.

In the notice of deficiency, respondent disallowed the deductions for self-employment tax claimed by petitioners on their 1990 and 1991 returns in the amounts of $7,849 and $10,246, respectively, stating that deductions are allowed for only one-half of self-employment taxes paid and that petitioners had previously been allowed to deduct one-half of the amounts they paid in self-employment taxes.

Filing of Federal Income Tax Returns for 1990 and 1991

Petitioners made estimated tax payments in the total amount of $7,711.20 for 1990. On or before April 15, 1991, petitioners filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, requesting an automatic 4-month extension of the due date of their 1990 return. No payment of tax accompanied their extension request. Respondent received petitioners' 1990 return on August 19, 1991.

Petitioners made estimated tax payments in the total amount of $10,246.60 for 1991. On or before April 15, 1992, petitioners filed Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return, requesting an automatic 4-month extension of the due date of their 1991 return. No payment of tax accompanied their extension request. Respondent received petitioners' 1991 return on July 20, 1992.

In the notice of deficiency dated August 11, 1994, respondent stated:

> Your income tax returns for the tax years 1990 and 1991 were not filed within the time prescribed by law. The

applications for automatic extensions of time to file are null and void. The total tax liabilities shown on the forms were not reasonable estimates of your correct liabilities. Consequently, 20 percent of the tax is added as provided by section 6651(a)(1) of the Internal Revenue Code.

## Accuracy-Related Penalties

In respondent's notice of deficiency, it was determined that all underpayments of tax for the taxable years 1990 and 1991 were due to negligence or disregard of rules or regulations, and that petitioners had not shown that the underpayments were due to reasonable cause.

### OPINION

Most of the issues in this case are factual and involve deductions claimed by petitioners. The burden of proof is on petitioners, and respondent's determinations of the income tax deficiencies, additions to tax, and accuracy-related penalties are presumptively correct. Rule 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Deductions are a matter of legislative grace, and petitioners bear the burden of proving entitlement to any claimed deductions. Rule 142(a); INDOPCO, Inc. v. Commissioner, 503 U.S. 79, 84 (1992).

I. Issues 1 Through 6. Claimed Casualty Loss Deductions

Section 165(a)[3] allows as a deduction any loss sustained during

---

[3]SEC. 165. LOSSES.

(a) General Rule.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

(continued...)

the taxable year and not compensated for by insurance or otherwise. Section 165(c) limits the allowance of losses in the case of individuals. Section 165(c)(3) allows as a deduction to an individual certain losses commonly referred to as casualty losses. A casualty loss is allowable to an individual for a loss of property not connected with a trade or business or with a transaction entered into for profit, if the loss results from "fire, storm, shipwreck, or other casualty", subject to limitations set forth in section 165(h).

Section 165(h)(1) provides that any loss of an individual described in section 165(c)(3) is allowed only to the extent that the amount of the loss arising from each casualty exceeds $100. Section 165(h)(2) provides that if the personal casualty losses for a taxable year exceed the personal casualty gains for the year, the losses are allowable only to the extent of the sum of

_____

[3](...continued)
            *     *     *     *     *     *     *

        (c) Limitation on Losses of Individuals.--In the
    case of an individual, the deduction under subsection
    (a) shall be limited to--

            (1) losses incurred in a trade or business;

            *     *     *     *     *     *     *

            (3) except as provided in subsection
        (h), losses of property not connected with a
        trade or business or a transaction entered
        into for profit, if such losses arise from
        fire, storm, shipwreck, or other casualty, or
        from theft.

the personal casualty gains for that taxable year plus so much of the excess as exceeds 10 percent of adjusted gross income for that taxable year.  Thus, where there are no personal casualty gains for a taxable year, personal casualty losses (in excess of $100 per casualty) are allowable to the extent that they exceed 10 percent of adjusted gross income for that taxable year.

The method of valuation to be used in determining a casualty loss is prescribed in section 1.165-7(a)(2), Income Tax Regs., which provides as follows:

> (i)  In determining the amount of loss deductible under * * * [section 165], the fair market value of the property immediately before and immediately after the casualty shall generally be ascertained by competent appraisal.  This appraisal must recognize the effects of any general market decline affecting undamaged as well as damaged property which may occur simultaneously with the casualty, in order that any deduction under * * * [section 165] shall be limited to the actual loss resulting from damage to the property.

> (ii)  The cost of repairs to the property damaged is acceptable as evidence of the loss of value if the taxpayer shows that (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty.

The amount deductible is governed by section 1.165-7(b)(1), Income Tax Regs., which provides that the amount of the loss to be taken into account for purposes of section 165(a) shall be the lesser of:  (1) The amount which is equal to the fair market value of the property immediately before the casualty reduced by

the fair market value of the property immediately after the casualty, or (2) the amount of the adjusted basis for determining the loss from the sale or other disposition of the property involved.

A.  Rain and Wind Damage to Home and Personal Property in 1988

The parties agree that the heavy rain and wind which caused damage to petitioners' home and its contents in 1988 was a casualty within the meaning of section 165(c)(3).  They also agree that any loss resulting from the casualty was sustained in 1991 when the litigation between petitioners and FGIU was settled with petitioners receiving a total recovery of $44,577.92, or a net of $32,040 after payment of attorney's fees and expenses. The dispute pertains primarily to the deductible amounts of the claimed casualty losses in excess of the insurance recovery. Petitioners claimed a casualty loss of $142,729 on their 1988 Federal income tax return.  The claimed amount was revised to $193,462, before insurance reimbursement, at the time of trial.

Petitioners contend that the evidence they submitted supports their claimed losses.  To the contrary, respondent contends that petitioners have failed to prove they actually sustained the claimed losses to their home and to many of the items of personal property, but, if so, they failed to establish the amounts of the losses.

We do not find persuasive the estimates of John Bernardi and Kenny Hester regarding the extent of damage to petitioners' home.

Neither testified or qualified as an expert. Mrs. Oliver offered only her uncorroborated testimony that Mr. Bernardi often does such estimates. Petitioners obtained Mr. Hester's estimate in 1993, several years after the claimed damage occurred, and thus we seriously doubt whether it was an accurate estimate of the cost to repair damage that occurred in 1988.

The estimates made by Mr. Bernardi and Mr. Hester do not show the decrease in fair market value of the home caused by the 1988 storm. Petitioners have presented no reliable evidence of the repairs made to the home as a result of the storm. An estimate of the cost to repair damage caused by a casualty ordinarily does not establish the amount of the casualty loss, as contemplated by section 1.165-7(a)(2)(i) and (ii), Income Tax Regs., unless the repairs are actually made. Lamphere v. Commissioner, 70 T.C. 391, 396 (1978).

Furthermore, even if the repairs detailed in the estimates were made, petitioners have not shown that the amount of repairs was no greater than necessary to restore the home to its condition prior to the storm, as required by section 1.165-7(a)(2)(ii), Income Tax Regs. Indeed, their home underwent a major renovation which increased its size from 3,700 square feet before the storm to approximately 9,000 square feet after the storm.

Likewise, petitioners' Personal Property Inventory Booklet is not persuasive to show that they sustained losses to their

personal property.  The booklet merely lists items of personal property that Mrs. Oliver and her secretary claim were damaged because of the heavy rain and wind in 1988.  We do not find a dry cleaning invoice convincing as to whether the items cleaned had been damaged by the heavy rain and wind.  In addition, the independent, court-appointed expert concluded that out of 230 disputed items, 119 had no apparent water damage; 62 items had possible or probable water damage; and it was impossible to determine whether the remaining 49 items suffered any water damage.

Petitioners argue that we should apply the rule in Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930), and approximate the amounts of the losses sustained by them as a result of the 1988 storm.  Respondent argues that the approximation rule described in the Cohan case is inapplicable here.  We agree with respondent because petitioners have failed to prove that they sustained casualty losses in excess of their insurance reimbursement and because their inexactitude in substantiating such casualty losses is of their own making.

Based on the facts and circumstances contained in this record, we hold that petitioners did not sustain a casualty loss with respect to the 1988 rain and wind storm in excess of their recovered insurance reimbursement.  Therefore, they are not entitled to a casualty loss deduction for the damage that resulted from that storm.

B.  Claimed Casualty Loss Carryover Deduction for 1990

On line 26 of Schedule A of their Federal income tax return for the taxable year 1990, petitioners claimed a miscellaneous deduction in the amount of $81,643.  The explanation given for the deduction was "casualty carry over from 1988 - 1989."  This deduction relates to the $142,729 claimed casualty loss for the claimed storm damage in 1988, which petitioners originally claimed on their Federal income tax return for the taxable year 1988.  The claimed casualty loss is properly before the Court for the taxable year 1991.  Consequently, petitioners are not entitled to the $81,643 claimed miscellaneous deduction for the taxable year 1990.

C.  Flood Damage to Home, Contents, Lawn, and Driveway in 1991

It is clear that the flooding of petitioners' property in February and April 1991 was so severe as to constitute two separate casualties within the meaning of section 165(c)(3).

1.  February Flood

With respect to the February flood damage to petitioners' home and its contents, an insurance adjuster for ABIC determined, and ABIC paid to petitioners, insurance reimbursement of $79,978.11, consisting of $26,698.61 for damage to the home (not including their lawn and driveway) and $53,279.50 for damage to its contents.  On their 1991 Federal income tax return petitioners claimed a loss of $156,778 for the damage caused by the February flood.  At trial, they reduced the amount of the

claimed loss to $105,704.87, before insurance reimbursement, consisting of $47,502.59 for damage to their home and $58,202.28 for damage to its contents. Of the $47,502.59, the amount of $11,603.75 was attributed to damage to their home, $8,398.84 to their lawn, and $27,500 to their driveway.

Respondent contends that petitioners have failed to establish that the amount of the February flood loss is either the amount claimed on their 1991 return or the reduced amount claimed at trial.

Petitioners failed to establish by competent appraisal the fair market value of their home and its contents before and after the February flood. It is petitioners' position that the cost to repair their home is the measure of its decrease in fair market value as a result of the damage caused by the February flood.

Petitioners calculated the $47,502.59 claimed loss to their home, including their lawn and driveway, by totaling the amount they claim to have spent repairing their home as a result of the February flood. Their evidence does not substantiate the amount claimed. The total amount of the invoices and canceled checks submitted by them does not approach $47,502.59. Furthermore, the estimate of the cost to repair their driveway is not persuasive unless the repairs were actually made. Lamphere v. Commissioner, supra at 396. The estimate was made 3 years after the February flood and no repairs have been made to the driveway.

In addition, petitioners presented no evidence, as required by section 1.165-7(a)(2)(ii), Income Tax Regs., that the amount they claim as the cost to repair their home is not greater than necessary to restore the home to its condition before the February flood. Petitioners testified that during or after 1990, the size of their home was increased to 10,000 square feet. We therefore think it is improbable that the amounts spent by them to repair their home after February 1991 restored their home to its condition before the casualty.

Petitioners calculated the $58,202.28 claimed loss to the contents of their home by totaling the claimed original cost of the contents. They presented no evidence which substantiates the claimed original cost.

Petitioners erred by calculating the claimed loss to the contents of their home based on the claimed original cost of the contents. Section 1.165-7(b)(1), Income Tax Regs., provides that the proper measure of the amount of a casualty loss is the lesser of the decrease in the fair market value of the property as a result of the casualty or the adjusted basis for determining the loss from the sale or other disposition of the property involved. Section 1.165-7(a)(2)(i) and (ii), Income Tax Regs., provides that the cost to repair property damaged by a casualty may be used to determine its decrease in fair market value as a result of the casualty when a competent appraisal has not been obtained.

Petitioners apparently contend that their cost basis in the contents of their home is less than the decrease in the fair market value of the contents as a result of the casualty. However, this seems illogical because personal property generally declines in value from the time it is first used. Thus, even if petitioners had shown the fair market value of the contents was zero after the casualty, their adjusted basis in the property might be greater than the decrease in fair market value of the property because of the casualty.

This is particularly true in the case of computer equipment, which has a tendency to become obsolete and declines in value. Petitioners included the claimed original cost of four Tandy computers with hard drives, one Tandy micro-computer, and three Tandy printers, totaling $23,700, as part of the $58,202.28 claimed loss to the contents of their home. Insofar as disclosed by the record, the original cost basis of the computer equipment would not be less than the decrease in fair market value of the equipment as a result of the casualty, even if petitioners had shown that the equipment was ruined in the flood.

Furthermore, petitioners claimed depreciation related to three computers, three printers, and a hard disk drive in amounts totaling $1,240 on each of their joint Federal income tax returns for the taxable years 1988, 1989, and 1990, and they claimed a section 179 deduction for a hard disk drive in the amount of $1,500 on their joint Federal income tax return for the taxable

year 1988. Thus, their claimed cost basis ($23,700) in this computer equipment should have been reduced by the claimed depreciation and section 179 expense by $2,740, which results in a $20,960 adjusted basis. Sec. 1016(a)(2)(A).

Even if petitioners had included the proper adjusted basis of their computer equipment in their $58,202.28 total claimed cost basis, however, they have failed to prove that they were entitled to calculate their claimed casualty loss based on the original cost of the contents of their home, rather than using the decrease in the fair market value of the contents of the residence as the appropriate measure of their sustained casualty loss.

We are not persuaded by petitioners' evidence that the loss to the contents of their home is $58,202.28 as a result of the February flood. The total amount of the invoices submitted by them does not approach $58,202.28.

Petitioners also presented no evidence that the amount they claim as the cost to repair the contents of their home is not greater than necessary to restore the contents to their condition prior to casualty. Such evidence is required by section 1.165-7(a)(2)(ii), Income Tax Regs.

We have found it difficult to determine with reasonable accuracy the amount of the loss sustained by petitioners in the February flood. Again, petitioners contend that we should approximate the loss sustained by them as a result of the

casualty based on <u>Cohan v. Commissioner</u>, 39 F.2d 540, 543-544 (2d Cir. 1930).  To the contrary, respondent contends that the <u>Cohan</u> approximation rule is inapplicable because petitioners have not shown they had casualty losses in excess of their insurance reimbursement and because their inexactitude in substantiating their claimed casualty losses is of their own making.  We agree with respondent and decline to apply the <u>Cohan</u> rule in these circumstances.

It is impossible to determine the total amount of insurance reimbursement received by petitioners as a result of the February flood.  We know they received reimbursement from ABIC for the damage to their home and its contents in the amounts of $26,698.61 and $53,279.50, respectively, as a result of the February flood.  But, in addition, they received two checks, one for the damage to their home and one for the damage to its contents, in undisclosed amounts and from an undisclosed insurance company, as reimbursement for the damage caused by the February flood.  However, they apparently received no insurance reimbursement for the damage to their lawn and driveway.  As to the lawn, the loss claimed by petitioners was determined by totaling the amounts they spent on the lawn before the flood, and, of course, that proved neither the fair market value of the lawn before the flood nor its fair market value after the flood.  And, with respect to the driveway, as previously indicated, no repairs were made.

Petitioners received $53,279.50 insurance reimbursement for the damage to the contents of their home, based on the insurance adjuster's worksheet, which estimated the cost to replace their personal property, less depreciation and salvage value. Petitioners have not proven that they sustained a loss of any greater amount.

In sum, based on the evidence in this record, we hold that petitioners failed to prove that the damage to their home and personal property exceeded the amount of insurance reimbursement they received from ABIC as a result of the February flood.

2.  Casualty Gain From February Flood

Respondent argues that petitioners received insurance reimbursement in excess of their sustained loss in the February flood, and thus improperly failed to report a casualty gain for 1991. Petitioners offered no evidence to prove that the amount of their casualty loss was not exceeded by the amount of insurance reimbursement received by them as a result of the February flood. Respondent, on the other hand, established that petitioners received insurance reimbursement, in excess of the $79,458.11 disclosed by them, in an undisclosed amount from an undisclosed insurance company as reimbursement for the damage caused by the February flood. Respondent determined in the notice of deficiency that the insurance reimbursement exceeded petitioners' sustained loss from the February flood by at least

$14,763. Petitioners have failed to prove otherwise. Therefore, we sustain respondent's determination on this issue.

    3.  Claimed Casualty Loss Deduction on Automobiles

    Petitioners claimed additional casualty losses on their 1991 return for damage to a 1984 Nissan 300ZX automobile and a 1989 Honda Accord automobile in the amounts of $8,565 and $11,000, respectively.

    Respondent contends that petitioners failed to prove that they sustained a loss to either automobile as a result of the February flood.

    In support of the claimed casualty losses to the two automobiles, petitioners testified that both automobiles were damaged by the February flood. However, they presented no evidence showing that they owned either automobile and no evidence, other than their uncorroborated testimony, showing that the automobiles were damaged by the February flood. Thus, we agree with respondent that petitioners failed to prove that they sustained losses on the two automobiles.

    Respondent also contends that, even if petitioners had shown that they sustained losses on the automobiles, they failed to prove the amounts of such losses.

    Petitioners calculated the amount of their claimed losses to the automobiles by subtracting the amount they determined to be the fair market value of the automobiles after the February flood from the amount they determined to be the fair market value of

the automobiles before the February flood.  Petitioners used the amounts they claimed to have received as salvage value and trade-in value for the automobiles after the February flood as the fair market value of the automobiles after the February flood.  They used NADA's list of average retail values of automobiles to determine the fair market value of the automobiles before the February flood.

Petitioners claimed to have received $335 in salvage value for the 1984 Nissan 300ZX and $2,000 in trade-in value for the 1989 Honda Accord.  NADA lists the average retail value of a 1984 Nissan 300ZX Coupe Turbo GL as $6,525, and the low mileage premium to be added to a standard size car with 7,501 to 15,000 miles as $2,400, or a total of $8,925.  The average retail value of a 1989 Honda Accord Sedan LXi and its applicable low mileage premium, which petitioners used to determine the retail value of the 1989 Honda Accord, are illegible in the photocopied NADA pages submitted by petitioners.

Petitioners, however, presented no evidence, other than their uncorroborated testimony, showing how much they received in salvage or trade-in value for the two automobiles.  And they presented no evidence proving the model, features, or mileage of either car.  Thus, we agree with respondent that petitioners failed to prove the amounts of such losses.  Consequently, they are not entitled to deduct a casualty loss on their 1991 return for damage to the two automobiles.

4. <u>April Flood</u>

With respect to the April flood damage to petitioners' home and its contents, an insurance adjuster for ABIC determined, and ABIC paid to petitioners, insurance reimbursement of $39,059.91, consisting of $27,372.91 for damage to the home and $11,687 reimbursement for damage to its contents.  On their 1991 Federal income tax return petitioners claimed a loss of $143,064.34, before insurance reimbursement, for damage to their home caused by the April flood.  At trial, they reduced the claimed loss to $99,383.28, before insurance reimbursement, consisting of a $79,863.28 loss claimed for damage to their home and a $19,520 loss claimed for damage to its contents.

Respondent contends that petitioners have failed to establish that the amount of the April flood loss is either the amount claimed on their 1991 return or the reduced amount claimed at trial.

Petitioners failed to establish by competent appraisal the fair market value of their home and personal property before and after the April flood.  It is petitioners' position that the cost to repair their home is the measure of its decrease in fair market value as a result of the damage caused by the April flood.

Petitioners calculated the $79,863.28 claimed loss to their home by totaling the amount they claim to have spent repairing their home as a result of the April flood.  Their evidence does not substantiate the amount claimed.  The total amount of a

statement, invoices, and canceled checks submitted by petitioners falls far short of the amount claimed. By contrast, the insurance adjuster's worksheet, which we find convincing, allowed only $28,425.39 to repair the home.

Moreover, petitioners presented no evidence that the amount they claim as the cost to repair their home is not greater than necessary to restore their home to its condition prior to the April flood. Such evidence is required by section 1.165-7(a)(2)(ii), Income Tax Regs. Petitioners testified that during or after 1990, the size of their home was increased to 10,000 square feet. We think it is improbable that the amounts spent by petitioners to repair their home after the April flood merely restored their home to its condition before the casualty.

Petitioners erred by calculating their claimed loss of $19,520 to the contents of their home based on the insurance adjuster's estimate of the replacement cost of the contents. Section 1.165-7(a)(2)(ii), Income Tax Regs., provides that the cost of repairs may be used to measure a casualty loss, but only if the value of the property after the repairs does not as a result of the repairs exceed the value of the property immediately before the casualty. To use replacement cost as the cost of repairs may violate this requirement since the fair market value of the replacement property will be greater than the fair market value of the replaced property immediately before the casualty. Hernandez v. Commissioner, 72 T.C. 1234, 1240-1241

(1979). Furthermore, an estimate of the cost of repairs to the property damaged because of a casualty is not evidence of the actual cost of repairs unless the repairs are actually made. Lamphere v. Commissioner, 70 T.C. at 396.

We are not persuaded by petitioners' evidence that the loss to the contents of their home is $19,520 as a result of the April flood. The total amount of the invoices and canceled checks submitted by petitioners does not approach $19,520. In addition, petitioners presented no evidence that the amount they claim as the cost to repair the contents of their home is not greater than necessary to restore the contents to their condition prior to the casualty, as required by section 1.165-7(a)(2)(ii), Income Tax Regs.

Here again, we find it difficult to determine with reasonable accuracy the amount of loss sustained by petitioners in the April flood. We decline to apply the Cohan rule in these circumstances. There is no sound basis for making an approximation because petitioners have not shown they had casualty losses in excess of their insurance reimbursement and because of their inexactitude in substantiating their claimed losses.

It is impossible to determine the total amount of insurance reimbursement received by petitioners as a result of the April flood. We know they received reimbursement from ABIC for the damage to their home and its contents in the amounts of

$27,372.91 and $11,687, respectively. But, in addition, petitioners received two checks, one for the damage to their home, and one for the damage to its contents, in undisclosed amounts and from an undisclosed insurance company, as reimbursement for the damage caused by the April flood.

Accordingly, based on the evidence contained in this record, we conclude that petitioners failed to prove that the damage to their home and personal property exceeded the amount of insurance reimbursement they received from ABIC as a result of the April flood. Petitioners therefore are not entitled to deduct a casualty loss on their 1991 return for damage caused by that flood.

5. <u>Claimed Business Casualty Loss Deduction for Computers and Equipment</u>

Petitioners deducted a business casualty loss of $6,880 on Schedule C of their 1991 return for damage to computer equipment located at their home at the time of the 1991 floods. The equipment consisted of one computer, one hard disk drive, one printer, and software.

Respondent contends that the business casualty loss claimed by petitioners for damage to computer equipment was duplicated in the casualty loss deduction arising from the February flood. We agree, and thus sustain respondent's determination that petitioners are not entitled to a business casualty loss deduction for the computers and equipment in 1991.

6.   Claimed Casualty Loss Deduction for Broken Kitchen Water Pipes

Petitioners contend that damage to their home resulting from broken kitchen water pipes is either part of the casualty loss arising from the floods in 1991 or a separate casualty loss deduction for 1991.  Respondent contends that the broken kitchen water pipes do not constitute a casualty within the meaning of section 165(c)(3).

A "casualty" is an event due to some sudden, unexpected, or unusual cause, such as a fire, storm, or shipwreck.  Durden v. Commissioner, 3 T.C. 1, 3 (1944).  The progressive deterioration of property through a steadily operating cause is not a casualty. Fay v. Commissioner, 120 F.2d 253 (2d Cir. 1941), affg. 42 B.T.A. 206 (1940).

Petitioners offered no evidence which establishes that their kitchen water pipes broke as a result of the 1991 floods.  Their flood insurance provider refused to cover the damage resulting from the broken water pipes because they were located below the flood water line, which indicates that the floods did not cause the pipes to break.  Therefore, we hold that the broken kitchen water pipes were not part of the casualty loss caused by the 1991 floods.  In the absence of proof that the water pipes broke as a result of the floods, the logical conclusion is that they broke as a result of progressive deterioration.  Consequently, no casualty loss may be deducted by petitioners for 1991 as a result of the broken water pipes.

## 7. Claimed Section 165(i) Relief

Section 165(i)(1) provides that any loss attributable to a disaster occurring in an area subsequently determined by the President of the United States to warrant assistance by the Federal Government under the Disaster Relief and Emergency Assistance Act may, at the election of the taxpayer, be taken into account for the taxable year immediately preceding the taxable year in which the disaster occurred.  If such an election is made, the casualty resulting in the loss is treated as having occurred in the taxable year for which the deduction is claimed. Sec. 165(i)(2).

Section 1.165-11(e), Income Tax Regs., provides that an election under section 165(i) must be made on or before the later of:  (1) The due date for filing the income tax return (determined without regard to any extension of time for filing the return) for the taxable year in which the disaster actually occurred, or (2) the due date for filing the income tax return (determined with regard to any extension of time for filing the return) for the taxable year immediately preceding the taxable year in which the disaster actually occurred.

Petitioners contended for the first time at trial that they are entitled to relief under section 165(i) for their claimed casualty losses resulting from the floods in 1991.  Petitioners did not address this issue in their brief.

Respondent does not question that Washington County, Mississippi, was officially determined a disaster area to which section 165(i) applies because of the floods which occurred in February and April of 1991.  However, it is asserted that petitioners did not timely elect under section 165(i) for that provision to apply to the 1991 floods.

The due date for filing petitioners' 1991 return (determined without regard to any extension of time for filing the return) was April 15, 1992.  The due date for filing their 1990 return (determined with regard to any extension of time for filing the return) was April 15, 1991.  The later of these two dates is April 15, 1992.  Because petitioners did not attempt to elect section 165(i) treatment until October 1995, the date of the trial of this case, petitioners did not make a timely election. Therefore, section 165(i) does not apply to treat the floods which occurred in 1991 as having occurred in 1990.

II.  <u>Issue 7.  Claimed Deductions for Legal and Professional Expenses</u>

Section 162(a) allows a deduction for all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.  Legal expenses are deductible under section 162(a) as ordinary and necessary business expenses if the litigation is directly connected with, or proximately related to, the taxpayer's business.  <u>Bingham Trust v. Commissioner</u>, 325 U.S. 365, 373-374 (1945); <u>Rafter v. Commissioner</u>, 60 T.C. 1, 8 (1973), affd. without published

opinion 489 F.2d 752 (2d Cir 1974).  Section 262 provides that no deduction shall be allowed for personal expenses.

First, petitioners contend that they are entitled to a deduction for 1990 of a $10,370.80 legal fee paid to an attorney in 1989 for representing Mrs. Oliver in a criminal case which arose out of her bookkeeping business.

Respondent does not question that the legal fee is a properly deductible business expense under section 162(a).  See Commissioner v. Tellier, 383 U.S. 687 (1966), which allowed a deduction under section 162(a) for amounts the taxpayer spent in defense of criminal charges which arose out of his business. Respondent contends, however, that because petitioners are cash method taxpayers, the amount was deductible only in 1989 when it was paid.

Section 461(a) provides that deductions shall be taken for the taxable year which is the proper taxable year under the method of accounting used in computing taxable income.  Section 1.461-1(a)(1), Income Tax Regs., provides that under the cash method of accounting, amounts representing allowable deductions shall generally be deducted in the taxable year in which such amounts are paid.

Petitioners argue that, even though the legal expenses were paid in 1989, they were not incurred until 1990, which is the year in which the legal services were performed, and thus they should be allowed a deduction in 1990.  They offered no evidence

showing that the legal services were performed in 1990. Consequently, we hold that the attorney's fee was not deductible in 1990.

Second, petitioners claim that they are entitled to deduct as a business expense a $6,000 payment made in 1990 in settlement of a lawsuit against Dr. Oliver. The lawsuit, in which the plaintiff alleged that Dr. Oliver acted unethically when he treated a child at his home for injuries the child suffered while playing with his son, was filed against Dr. Oliver personally and in his professional capacity as a physician.

Respondent argues that because the $6,000 payment represented a payment in settlement of litigation and was not a legal fee, it is not deductible under section 162(a). Alternatively, respondent argues that the expense was personal in nature.

It is well established that settlement payments made to avoid litigation are deductible under section 162(a) as ordinary and necessary business expenses when they have a business origin. Anchor Coupling Co. v. United States, 427 F.2d 429, 433 (7th Cir. 1970); Eisler v. Commissioner, 59 T.C. 634 (1973). Here we find that petitioners are not barred from deducting payments made in settlement of the litigation.

To determine whether a payment made in settlement of litigation is directly connected with, or proximately related to, the taxpayer's business, the controlling criteria are the origin

and character of the controversy, rather than the potential consequences of the failure to prosecute or defend the litigation. United States v. Gilmore, 372 U.S. 39, 44-51 (1963); Anchor Coupling Co. v. United States, supra at 433.

In Freedman v. Commissioner, 301 F.2d 359 (5th Cir. 1962), affg. 35 T.C. 1179 (1961), the Court of Appeals held that the cost of settling a personal injury suit arising out of an accident which occurred while the taxpayer was en route from one place of employment to another was a nondeductible personal expense because the taxpayer was not engaged in his vocation at the time of the accident. Similarly, after applying the "origin of claim" test in Marcello v. Commissioner, 380 F.2d 499, 504-505 (5th Cir. 1967), affg. in part 43 T.C. 168 (1964), the deduction for attorney's fees was denied because the controversy did not originate out of a business activity.

Here, by contrast, the origin of the controversy was Dr. Oliver's medical treatment, as a physician, of a child for injuries at his home. Unlike the taxpayers in the Freedman and Marcello cases, Dr. Oliver was acting in his professional capacity when the controversy arose, and therefore the payment in settlement of the lawsuit was a business, rather than personal, expense. Consequently, we hold that petitioners are entitled to deduct the $6,000 paid in 1990 in settlement of litigation as an ordinary and necessary business expense. See Musgrave v. Commissioner, T.C. Memo. 1997-19.

Third, petitioners contend that they are entitled to a deduction in 1991 for damages of $4,500 and legal fees of $1,500, which resulted from a lawsuit filed by a neighbor against them after they constructed a landfill on their property.

Respondent argues that the amounts paid as damages and legal fees are not deductible because they are personal expenses. Petitioners argue that they were business expenses because petitioners maintained an office at their home which was protected from flood damage by the landfill.

We agree with respondent that the amounts petitioners paid as damages and legal fees as a result of the construction of a landfill on their property were personal expenses and thus nondeductible. Applying the "origin of claim" test, we conclude that the controversy did not originate in petitioners' business activity, but rather originated in their effort to protect their home from flooding. United States v. Gilmore, supra at 44-51. The connection between the construction of the landfill and petitioners' business activities is far too attenuated for us to conclude that the expenses were not personal. In any event, petitioners, as cash method taxpayers, are not entitled to deduct the damages and legal fees because they apparently were not paid by them until 1992, a year that is not before the Court in this case.

III.  Issue 8.  Interest Income

Section 61(a) provides that gross income means all income from whatever source derived.  Section 61(a)(4) provides that gross income includes interest.

Respondent contends that petitioners failed to report interest income of $2,824 on their Federal income tax return. Information returns provided to respondent show that petitioners received $17,952 in interest income in 1990.  Petitioners reported only $15,128 as interest income on their 1990 return.

Petitioners contend that $633 of the unreported interest income paid by Allstate Life Insurance Co. (Allstate) was not taxable.  They submitted a letter from Allstate, which they claim explained that the interest was not taxable.  The letter does not support their contention.

Petitioners have offered no evidence as to the remaining amount of unreported interest income determined by respondent. However, respondent presented testimony and documentary evidence showing that petitioners received $2,824 in interest income which was not reported on their 1990 return.  Therefore, respondent is sustained on this issue.

IV.  Issue 9.  Claimed Deductions for Self-Employment Taxes

Section 275(a)(1) provides that no deduction shall be allowed for Federal income taxes.  However, section 275 does not apply to disallow a deduction for taxes to the extent such a deduction is allowable under section 164(f), which provides that

one-half of the self-employment tax for the taxable year is allowed as a deduction.

Through adjustments made to petitioners' 1990 and 1991 income tax returns at the Memphis Service Center, petitioners were allowed to deduct one-half of the self-employment tax reported by them on those returns.

Petitioners contend that they are entitled to a deduction for the full amount of self-employment tax paid by them in 1990 and 1991 in the amounts of $7,849 and $10,246, respectively. However, petitioners offer no support for this contention. Respondent counters with the assertion that the deductions claimed by petitioners on their returns for 1990 and 1991 for the full amount of self-employment tax paid by them should be disallowed. Because petitioners were previously allowed a deduction for one-half of the self-employment tax reported by them on their returns for 1990 and 1991, as provided in section 164(f), we agree with respondent that the full amount of the deductions claimed by them on their returns for 1990 and 1991 should be disallowed. We so hold.

V. Issue 10. Statute of Limitations on Assessment for 1990

Petitioners contend that respondent's notice of deficiency for 1990 was issued after the statutory period for the assessment of a tax deficiency had expired. This issue was raised for the first time in petitioners' brief.

Respondent contends that petitioners should not be allowed to raise this issue for the first time in their brief because it was not pleaded by petitioners as an affirmative defense in their petition or at the trial.

We agree with respondent. Rule 39 requires that the statute of limitations be pleaded as an affirmative defense. Where a taxpayer fails to plead the expiration of the statutory period of limitations as an affirmative defense in his petition, that issue is not properly before the Court. United Bus. Corp. of Am. v. Commissioner, 19 B.T.A. 809, 831-832 (1930), affd. 62 F.2d 754 (2d Cir. 1933). Moreover, petitioners' contention lacks merit because the notice of deficiency covering 1990 was sent to petitioners on August 11, 1994, which was within 3 years after their 1990 return was filed on August 19, 1991. Sec. 6501(a).

VI. Issue 11. Section 6651(a)(1) Additions to Tax

Section 6651(a)(1) provides for an addition to tax for failure to file a Federal income tax return by its due date, determined with regard to any extension of time for filing, unless such failure was due to reasonable cause. In this case petitioners applied for automatic 4-month extensions of time within which to file their 1990 and 1991 returns. If the requests for extensions were effective, their 1990 and 1991 returns were due on August 15, 1991, and August 15, 1992, respectively. Sec. 1.6081-4, Income Tax Regs. Petitioners' 1990

return was received by respondent on August 19, 1991, and their 1991 return was received by respondent on July 20, 1992.

Respondent takes the position that the applications for automatic extensions were invalid because petitioners did not comply with regulations for obtaining such extensions, and, therefore, the applications for automatic extensions were null and void. Section 1.6081-4(a)(4), Income Tax Regs., provides that the application for extension must show the full amount properly estimated as tax for the taxpayer for the taxable year, and that the application must be accompanied by the full remittance of the amount properly estimated as tax which is unpaid as of the date prescribed for filing the return. An extension of time to file a return does not extend the time for payment of tax due on the return. Sec. 1.6081-4(b), Income Tax Regs.

Petitioners made no payment of tax with their extension requests for 1990 or 1991, although they made estimated tax payments of $7,711.20 for 1990 and $10,246.60 for 1991. Petitioners underestimated their 1990 estimated tax liability by approximately $25,000 and their 1991 tax liability by approximately $50,000.

In Crocker v. Commissioner, 92 T.C. 899, 908 (1989), this Court held that a taxpayer should be treated as having "properly estimated" his tax liability when he makes a bona fide and reasonable estimate of his tax liability based on the information

available to him at the time he makes his request for extension, and that a taxpayer must make a bona fide and reasonable attempt to locate, gather, and consult information which will enable him to make a proper estimate of his tax liability.  An extension of time to file a return is invalid when the taxpayer fails to make a proper estimation of his tax liability, even if the taxpayer receives no notice of the termination of the extension request. Crocker v. Commissioner, supra at 910-912.

In the instant case petitioners' estimate of their tax liability for each year, based on the information available to them at the time of their extension request, was not reasonable. Petitioners concluded that they owed zero tax in addition to the estimated tax payments they had already made for the years 1990 and 1991 based, among other things, on their contentions that they incurred deductible casualty losses in excess of insurance reimbursements, and that they were entitled to deductions for the full amounts of self-employment taxes paid by them in 1990 and 1991.  However, we have found that these positions are without merit.  As a matter of law, petitioners are entitled to a deduction for only one-half of the self-employment tax paid by them.  Sec. 164(f).  And they failed to produce evidence showing that they were entitled to casualty loss deductions for 1990 and 1991 in amounts in excess of their insurance reimbursements.

Since petitioners failed to "properly estimate" their tax liabilities, the Forms 4868 on which they requested extensions of

time within which to file their 1990 and 1991 Federal income tax returns were invalid.

If the Commissioner voids an automatic extension for failure of a taxpayer to properly estimate, the taxpayer is liable for an addition to tax under section 6651(a)(1), unless he can establish that the failure to file a return by the date prescribed by law is due to reasonable cause and not due to willful neglect. Crocker v. Commissioner, supra at 912. The term "willful neglect" implies a conscious, intentional failure to file or reckless indifference to the obligation to file. United States v. Boyle, 469 U.S. 241, 245 (1985). A failure to file is due to "reasonable cause" if the taxpayer exercised ordinary business care and prudence and was, nevertheless, unable to file his return within the date prescribed by law. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.

Petitioners argue that their failure to file timely their 1990 return was due to reasonable cause and not willful neglect because in February and April of 1991, the months in which information needed to be gathered and the 1990 return prepared, they experienced flooding at their home which was so severe that Washington County was declared a Presidential disaster area. They assert that because of the floods necessary documents were destroyed and they were too preoccupied with the damage to their home to file their Federal income tax return on time.

Petitioners offer no explanation of their failure to file their 1991 return timely.

Petitioners' allegation as to the unavailability of records does not establish reasonable cause for failure to file timely returns. Electric & Neon, Inc. v. Commissioner, 56 T.C. 1324, 1342-1344 (1971), affd. without published opinion sub nom. Jiminez v. Commissioner, 496 F.2d 876 (5th Cir. 1974). A taxpayer is required to file a timely return based on the best information available and to file an amended return thereafter if necessary. Estate of Vriniotis v. Commissioner, 79 T.C. 298, 311 (1982). In addition, a taxpayer is not excused from timely filing his income tax return merely because he is overworked. Crocker v. Commissioner, supra at 913; Dustin v. Commissioner, 53 T.C. 491, 507 (1969), affd. 467 F.2d 47 (9th Cir. 1972). Consequently, we hold that petitioners have not established that the failure to file timely 1990 and 1991 returns was due to reasonable cause, and that they are liable for the additions to tax under section 6651(a)(1).

VII. Issue 12. Section 6662(a) Accuracy-Related Negligence Penalties

Finally, respondent determined that petitioners are liable for accuracy-related penalties under section 6662(a) for 1990 and 1991.

The accuracy-related penalty is equal to 20 percent of any portion of an underpayment attributable to a taxpayer's

negligence or disregard of rules or regulations.  Sec. 6662(a) and (b)(1).  The term "negligence" includes any failure to do what a reasonable and ordinarily prudent person would do under the same circumstances.  Neely v. Commissioner, 85 T.C. 934, 947 (1985).  The term "disregard" includes any careless, reckless, or intentional disregard.  Sec. 6662(c).  The penalty does not apply to any portion of an underpayment for which there was reasonable cause and with respect to which the taxpayer acted in good faith.  Sec. 6664(c)(1).

Petitioners failed to prove that they were not negligent.  They failed to report taxable interest income received by them in 1990.  They claimed deductions for self-employment tax on their returns for 1990 and 1991 even though they are not, as a matter of law, entitled to such deductions.  They claimed casualty loss deductions in 1991 to which they were not entitled.  Worksheets prepared by them in support of their claimed casualty loss caused by the February flood contained duplications of the claimed losses relating to individual items.  Worksheets prepared by them in support of their claimed casualty loss caused by the April flood contained numerous duplications of individual items which petitioners had included in their claimed loss as a result of the February flood.

Accordingly, except for the $6,000 business expense deduction allowed for the litigation settlement, we hold that petitioners are liable for the accuracy-related penalties for

negligence with respect to underpayments relating to all other issues.

To reflect conceded and settled issues and our conclusions with respect to the disputed issues,

<u>Decision will be entered under Rule 155</u>.